State of WISCONSIN LAW ENFORCEMENT STANDARDS
BOARD, Plaintiff-Respondent,

v.

VILLAGE OF LYNDON STATION, Juneau County, Wisconsin;
John Adams; Phillip Kress; and Edward Walsh,
Defendants-Appellants.†

Court of Appeals

*No. 78–456. Argued August 30, 1979.—Decided July 28, 1980.*
(Also reported in 295 N.W.2d 818.)

† Petition to review granted.

For the defendants-appellants there were briefs by *Jean G. Setterholm* and *Jon P. Axelrod* and *DeWitt, McAndrews & Porter, S.C.* of Madison, and oral argument by *Jean G. Setterholm.*

For the plaintiff-respondent there were briefs by *Bronson C. La Follette,* attorney general, and *James C. McKay, Jr.,* assistant attorney general, and oral argument by *James C. McKay, Jr.,* assistant attorney general.

Brief of amicus curiae was filed by *Dianne Greenley,* project director, and *Neil Gebhart,* project assistant, on behalf of *Center for Public Representation,* Reintegration Project, of Madison.

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

DYKMAN, J. This case involves the authority of a municipality to employ a police chief who has been con-

victed of a felony when such employment violates a rule of the Wisconsin Law Enforcement Standards Board.[1]

William Jessen was convicted of 26 counts of misconduct in public office contrary to sec. 946.12(4), Stats., on April 27, 1973. He was sentenced to 26 concurrent one-year sentences, which were stayed, and was placed on probation for two years. He successfully completed his probation on May 15, 1975.

The Village of Lyndon Station hired Jessen as its police chief on September 30, 1974. The village board was aware of Jessen's convictions, but thought them to be misdemeanors.

In December, 1974, the Wisconsin Law Enforcement Standards (WLES) Board notified the mayor of Lyndon Station,[2] in accordance with sec. LES 2.01(1)(d), Wis. Adm. Code, that Jessen's felony convictions disqualified him from employment as a law enforcement of-

[1] The powers of the Law Enforcement Standards Board are set forth in sec. 165.85(3), Stats.

[2] Exhibit C (a letter dated April 1, 1977, addressed to the mayor of Lyndon Station), refers to a letter dated December 9, 1974. The December letter was stricken from this court's record. Exhibit C reads in pertinent part as follows:

As you will recall, you were advised in previous correspondence, e.g., my letters of December 9, 1974, and January 2, 1975, that it was the Board's position that Mr. Jessen is ineligible to hold such position as Chief of Police because of his standing convicted of 26 counts of misconduct in public office contrary to sec. 956.12, Stats., for which offenses he has not been pardoned. The Board maintains that position.

Therefore, demand is made upon you and the Village Board for the immediate removal of Mr. Jessen as Lyndon Station Chief of Police. If we do not receive confirmation within 14 days of the date of this letter that such removal has been accomplished, we will then proceed to institute the appropriate proceedings on behalf of the Board for such removal.

Yours truly,
James C. McKay, Jr.
Assistant Attorney General

ficer.[3] The village board refused to comply with the WLES board's directive, and on May 29, 1978,[4] entered into an employment contract with Jessen. On July 8, 1977, the Wisconsin Department of Justice sought mandamus to compel the village to terminate Jessen's employment.

The trial court found that sec. LES 2.01(1)(d), Wis. Adm. Code, was valid and that the municipality was in violation of the rule. The Village of Lyndon Station appeals from the trial court's judgment and order issuing the mandamus.

The issues on appeal are:

(1) Is a violation of sec. 946.12(4), Stats., a felony?

(2) Does art. XIII, sec. 3 of the Wisconsin Constitution, which bars persons convicted of infamous crimes from any office of trust, profit or honor, require the village to terminate Jessen?

(3) Does sec. LES 2.01(1)(d), Wis. Adm. Code, violate the due process and equal protection clauses of the fourteenth amendment to the United States Constitution because it creates an irrebuttable presumption that all persons convicted of felonies are unfit to be law enforcement officers?

(4) Did the enactment of sec. 111.32(5)(h), Stats., which amended the Fair Employment Relations Act by

---

[3]Section LES 2.01(1)(d), Wis. Adm. Code, provides:

*Minimum qualifications for recruitment.* (1) Before an individual may commence employment on a probationary, temporary, part-time or full-time basis as a law enforcement officer, that individual must have met recruit qualifications established by the board. The minimum qualifications for recruitment shall be:

. . . .

(d) The applicant shall not have been convicted of any federal felony or of any offense which if committed in Wisconsin could be punished as a felony unless the applicant has been granted an absolute and unconditional pardon.

[4] The contract was signed on May 29, 1978, and was entered into "as of April 1, 1975."

prohibiting discrimination in employment on the basis of arrest and conviction records, repeal or modify sec. LES 2.01(1) (d), Wis. Adm. Code?

(5) Is the state estopped from bringing this action because the district attorney and trial judge in the misconduct in public office action referred to the charges against Jessen as misdemeanors?

(6) Is mandamus the proper remedy to enforce a rule of the Law Enforcement Standards Board?

*Is A Violation of Sec. 946.12(4) a Felony?*

At the time of Jessen's conviction, sec. 946.12(4), Stats., was punishable by a fine of not more than $500 or imprisonment of not more than one year or both. Section 939.60, Stats. (1971), provided: "A crime punishable by imprisonment in the state prison is a felony. Every other crime is a misdemeanor." Section 973.02, Stats., provides in relevant part: "[a] sentence of one year may be to either the Wisconsin state prisons or the county jail." Thus, a violation of sec. 946.12(4) would appear to be a felony. However, when faced with much the same question involving sec. 940.24, Stats. (1973), the court said in *State v. Asfoor*, 75 Wis.2d 411, 438, 249 N.W.2d 529, 541 (1977):

Because this crime is punishable by imprisonment in the state prison, it would seem to be a felony, but one cannot come to this conclusion without an examination of *State ex rel. Gaynon v. Krueger*, 31 Wis.2d 609, 143 N.W.2d 437 (1966). In *Gaynon* it was argued that because the statute in question imposed a penalty of imprisonment of not more than a year, it was a felony. The court noted that when the statute in question was created the legislature intended its violation to be a misdemeanor. That was so because at the time the statute was created it was generally recognized that statutes which did not designate a place of imprisonment created misdemeanors.

*Id.* at 615–16, 143 N.W.2d at 440. The court held that "[t]o upgrade a misdemeanor to a felony requires a clear expression of intent of the legislature." *Id.* at 620, 143 N.W.2d at 442. The court went on to note that the statute in question was not part of the criminal code and was not under consideration when that code was drafted. Section 940.24(1) is part of the criminal code.

Appellants argue that the analysis in *State ex rel. Mc-Donald v. Douglas County Cir. Ct.*, 95 Wis.2d 423, 290 N.W.2d 559 (Ct. App. 1980), which held that sec. 346.67, Stats.,[5] was a misdemeanor, requires this court to conclude that sec. 946.12(4), Stats., is a misdemeanor.

In *McDonald,* the court said:

We conclude that a violation of sec. 346.67 is a misdemeanor. In 1935 it was created as a misdemeanor, not a felony. . . . The penalty for the offense has not been changed since 1935. Accordingly, the grade has not been changed since 1935. As no substantive changes have been made, a violation of sec. 346.67 remains a misdemeanor, as it was in 1935. *McDonald,* 95 Wis.2d at 428–29, 290 N.W.2d at 562.

The same reasoning is applicable here, but with the opposite result. Section 946.12, Stats., was created by sec. 1, ch. 696, Laws of 1955, and combined five previous criminal statutes.[6]

The legislative history of the penalty for a violation of sec. 946.12(4), Stats., indicates that it has held a felony status since 1915. Prior to 1915, sec. 4549, Stats. (1898), provided a penalty of "imprisonment in the county jail not more than one year, or by fine not exceeding five

[5] This statute describes the duty of a vehicle operator upon striking person or attended or occupied vehicle.

[6] Section 348.28, Stats. (1953), *Public Officers, Malfeasance;* sec. 348.219, Stats. (1953), *Official Neglect at Local Elections;* sec. 348.232, Stats. (1953), *Neglect By Election Officers*; sec. 348.-33, Stats. (1953), *False Certificate;* and sec. 348.34, Stats. (1943), *Same as to Scalps of Animals.*

hundred dollars." In 1909, the legislature changed the penalty to "imprisonment in the county jail not more than one year, or in the state prison not more than 5 years, or by fine not exceeding $500." Ch. 282, Laws of 1909. The penalty was again changed in the 1955 revision of the criminal code to "not more than $500 or imprisoned not more than one year or both."

The legislature recently revised the criminal code to indicate the status of all crimes.[7] Section 946.12, Stats., was classified as a Class E felony, punishable by a fine not to exceed $10,000 or imprisonment not to exceed two years, or both.[8] In the legislative analysis of this chapter, the Joint Legislative Council noted that three felonies had been reclassified as misdemeanors, 15 misdemeanors as felonies and nine crimes as civil forfeitures. Section 946.12 was not listed as having been reclassified in any manner.

Appellants argue that it is unreasonable to characterize sec. 946.12, Stats., as a felony because four of the five crimes, combined in the statutes were "unquestionable misdemeanors." Wisconsin appellate courts have refused to upgrade a misdemeanor to felony status solely upon the basis of the statutory definition of a felony. *Wilson v. State,* 1 Wis. 163 (1853); *Gaynon,* 31 Wis.2d 609; *McDonald,* 95 Wis.2d 423.

However, it is not clear that the four previous crimes were misdemeanors after the 1955 criminal code revision.[9] Sections 348.219, 348.232, and 348.33, Stats. (1953), provided for less than one year of imprisonment in the county jail as a penalty. Section 348.34, Stats. (1953) provided for a penalty of no more than one year of imprisonment without specifying the place of imprisonment. In the 1955 revision of the criminal code, the penalty for all four crimes was imprisonment for no

[7] Ch. 173, Laws of 1977.

[8] Sec. 939.50(3)(e), Stats.

[9] Ch. 696, Laws of 1955.

more than a year, without specifying the place of imprisonment. Thus, the penalty for three of the four crimes was increased to allow imprisonment in state prison. This increase, in light of the definition of "felony" found in sec. 939.60, Stats., cited previously, also reenacted as part of the 1955 revision of the criminal code, is a strong indication of legislative intent to upgrade to felony status.

We hold that a review of the legislative history shows a legislative intent to consider sec. 946.12, Stats., to be a felony.

*Effect of Art. XIII, Sec. 3 of the Wisconsin Constitution*

Article XIII, sec. 3 of the Wisconsin Constitution reads in pertinent part: "No person convicted of any infamous crime in any court within the United States . . . shall be eligible to any office of trust, profit or honor in this state."

The term "office" as used in art. XIII, sec. 3 of the Wisconsin Constitution, means "public office." *Martin v. Smith*, 239 Wis. 314, 327, 1 N.W.2d 163 (1941).

The Wisconsin Supreme Court in *Becker v. Green County*, 176 Wis. 120, 124, 184 N.W. 715 (1922), *reh.* 186 N.W. 584 (1922), concluded that a crime punishable by imprisonment in a state prison, i.e., a felony,[10] is an infamous crime within the meaning of art. XIII, sec. 3 of the Wisconsin Constitution.

---

[10] The statutory definition of felony at the time of *Becker*, 176 Wis. 120, was similar to the present definition. Chapter 188, sec. 4637, Stats. (1921), provided:

The term "felony," when used in any statute, shall be construed to mean an offense for which the offender, on conviction, shall be liable by law to be punished by imprisonment in a state prison.

Whether a village police chief is a public officer or an employee who is not subject to the provisions of art. XIII, sec. 3, Wisconsin Constitution, is less clear. The Wisconsin Supreme Court has long found the difference between a public officer and an employee difficult to discern. *Sieb v. Racine,* 176 Wis. 617, 624, 187 N.W. 989 (1922). The passage of time has not made the task easier.

A "public officer" in the context of art. XIII, sec. 3 of the Wisconsin Constitution is distinct from a "public officer" for purposes of different statutory provisions. Thus, cases which have determined that a police officer is or is not a public officer, outside the context of the state constitutional provision, are not determinative of the issue in this case.

Some words and phrases are subject to more than one meaning, depending upon the context in which used. The term *"public officer"* falls within this category. A city police patrolman is not a public officer in the sense of having a salary attached to his position which would be due to him if he were wrongfully suspended or ousted from such position irrespective of whether he had sustained any actual damage thereby. On the other hand, a police patrolman is commonly referred to as a police officer and in this sense is a public officer. We are satisfied that it was the intention of the legislature to include police officers within the term "public officers" appearing in sec. 270.58, Stats. *Matczak v. Mathews,* 265 Wis. 1, 5, 60 N.W.2d 352, 354 (1953).

Thus, for the purposes of sec. 270.58, Stats. (1949), (now sec. 895.46, Stats.) [11] as it existed at the time of

[11] Section 270.58, Stats. (1949), reads:

State and political subdivisions thereof to pay judgments taken against officers. Where the defendant in any action, writ or special proceeding, except in actions for false arrest, is a public officer and is proceeded against in his official capacity and the jury or the court finds that he acted in good faith the judgment as to damages and costs entered against the officer shall be paid by the state or political subdivision of which he is an officer.

*Matczak,* a city patrolman was a "public officer," whereas, in *Heffernan v. Janesville,* 248 Wis. 299, 307, 21 N.W. 2d 651 (1946), a city patrolman was not a "public officer" for the purpose of determining whether he was entitled to his salary during the time he was improperly suspended from duty.

In addressing the definition of a "public officer" in the context of art. XIII, sec. 3 of the Wisconsin Constitution the court in *Martin v. Smith,* 239 Wis. 314, summarized the factors which must be considered in determining who is a public officer:

"to constitute a position of public employment a public office of a civil nature, it must be created by the constitution or through legislative act; must possess a delegation of a portion of the sovereign power of government to be exercised for the benefit of the public; must have some permanency and continuity, and not be only temporary or occasional; and its powers and duties must be derived from legislative authority and be performed independently and without the control of a superior power, other than the law, except in case of inferior officers specifically placed under the control of a superior officer or body, and be entered upon by taking an oath and giving an official bond, and be held by virtue of a commission or other written authority." [Citing *State ex rel. Barney v. Hawkins,* 79 Mont. 506, 257 Pac. 411, 43 A.L.R. 583 (1927).]

. . . It is certain that a person employed cannot be a public officer, however chosen, unless there is devolved upon him by law the exercise of some portion of the sovereign power of the state in the exercise of which the public has a concern. *Martin,* 239 Wis. at 332, 1 N.W.2d at 172.

This broad definition of the term "public officer," was further clarified in *Burton v. State Appeal Board,* 38 Wis.2d 294, 300, 156 N.W.2d 386, 390 (1968):

A careful review of *Martin v. Smith* indicates that the principal consideration determining whether a position

is an office and one holding it is an officer is the type of power that is wielded.

An examination of the village police chief's position in light of the criteria enumerated in *Martin* indicates that Jessen's position is a public office within the context of art. XIII, sec. 3, Wisconsin Constitution.

The power wielded by Jessen is described in secs. 61.-31(2),[12] 61.28,[13] 61.29[14] and 60.54,[15] Stats. One of the

[12] Section 61.31(2), Stats., reads:

Every village police officer shall possess the powers, enjoy the privileges, and be subject to the liabilities conferred and imposed by law upon village marshals.

[13] Section 61.28, Stats., reads:

The village marshal shall execute and file an official bond. The marshal shall possess the powers, enjoy the privileges and be subject to the liabilities conferred and imposed by law upon constables, and be taken as included in all writs and papers addressed to constables. The marshal shall obey all lawful written orders of the village board; and arrest with or without process every person found in such village engaged in any disturbance of the peace or violating any law of the state or ordinance of such village. The marshal may command all persons present in such case to assist, and if any person, being so commanded, refuses or neglects to render assistance the person shall forfeit not exceeding $10. The marshal shall be entitled to the same fees allowed to constables for similar services; for other service rendered the village compensation as the board fixes.

[14] Section 61.29, Stats., reads:

The constable shall execute and file an official bond, and shall be governed in every respect by the law prescribed for constables in towns.

[15] Section 60.54, Stats., reads:

The constable shall:

(1) Serve within his county any writ, process, order or notice, and execute any order, warrant or execution lawfully directed to or required to be executed by him by any court or officer.

(2) Attend upon sessions of the circuit court in his county when required by the sheriff.

(3) Inform the district attorney of all trespasses on public lands of which he has knowledge or information.

most important of these powers is the authority to arrest as authorized in sec. 61.28. As the Wisconsin Supreme Court said in *Newspapers Inc. v. Breier,* 89 Wis. 2d 417, 436, 279 N.W.2d 179, 188 (1979) :

An arrest represents the exercise of the power of the state to deprive a person of his liberty. . . .
An arrest is a complete official act. . . .
The power to arrest is one of the most awesome weapons in the arsenal of the state.

The power of a police chief to arrest persons who have violated the law is not subject to the authority of the village board.[16]

Thus, for purposes of art. XIII, sec. 3, Wisconsin Constitution, a village police chief does possess a delegation of a portion of the sovereign power of government to be exercised for the benefit of the public. *Martin,* 239 Wis. at 332.

Jessen's position was created by a legislative act and is permanent. He was originally hired by the village board on September 30, 1974, and entered into an employment contract with the village on May 29, 1978. The employment contract provided:

(5) Impound cattle, horses, sheep, swine and other animals at large on the highways in violation of any duly published order or bylaw adopted at an annual town meeting.

(6) Cause to be prosecuted all violations of law of which he had knowledge or information.

(6m) Keep his office in the town, village or city for which he was elected or appointed. No constable who keeps his office outside the limits of such municipality shall receive fees for any service performed during the period such office is maintained.

(7) Perform all other duties required by any law.

[16] A stipulation of facts provided "as a law enforcement employee, Jessen reports to, and obeys all orders of the President of the Village of Lyndon Station and the Village Board." This stipulation, insofar as it contains conclusions of law, is not binding upon the trial court or this court. *First Nat. Leasing Corp. v. Madison,* 81 Wis.2d 205, 260 N.W.2d 251 (1977).

4. The Village agrees that Jessen's employment is permanent and that Jessen can be removed from employment only for cause. "Cause" as used herein shall be limited to misconduct or malfeasance occurring in his position as Chief of Police of the Village, or physical or mental incapacity of such nature that Jessen is no longer able to perform the duties of Chief of Police. Further, the Village agrees that Jessen will not be removed from his employment except upon notice and hearing before an impartial decision-maker appointed by the Village Board.

Jessen was required to give an official bond in accordance with secs. 61.31(2) and 61.28, Stats., but he was not required to take an oath of office. His office was held by virtue of the written authority of his employment contract.[17]

Article XIII, sec. 3 of the Wisconsin Constitution is intended to preserve public confidence in government, to prevent dishonesty involving the public resources, and to prevent the use of public office for private gain.[18]

---

[17] In the Montana case upon which the criteria of *Martin*, 239 Wis. 314, were based, the court stated that a commission or written authority was required by state statute. *State ex rel. Barney v. Hawkins*, 257 Pac. 411, 418 (1927). Mont. Rev. Code secs. 426–429 (1921).

Thus, this court does not find the existence or absence of an employment contract with Jessen to be a significant factor in determining whether he is a public officer.

[18] Although the Wisconsin court has not discussed the purpose of this constitutional provision, other states with similar prohibitions have. In *People ex rel. Taborski v. Illinois Appellate Court, First Dist.*, 278 N.E.2d 796, 798 (1972), the Illinois Supreme Court explained:

The intent of this provision and those statutes enacted in implementation thereof is very clear. Our system of government depends in large part upon trust and confidence in public officials. When a public official is convicted of an infamous crime, there can be no doubt that public confidence in him and in his future performance in the unit of government in which he serves is seriously damaged, if not totally destroyed. To prevent such a break-

Disqualifying convicted felons from holding a public office such as a village police chief is a reasonable method of achieving these goals.[19]

The position of village police chief meets all but one of the criteria for a public office set forth in *Martin*, 239 Wis. 314. We do not find it necessary to meet all criteria listed in *Martin*. In *Burton v. State Appeal Board*, 38 Wis.2d at 303, 156 N.W.2d at 391, the Wisconsin Supreme Court found that members of the state appeal board of the Department of Public Instruction were public officers within the meaning of art. XIII, sec. 3, Wisconsin Constitution, even though they were not required to take an oath. The court said:

[T]he court is concerned not with the panoply of the ceremonials by which the position is assumed but rather the nature of the power that devolves upon the position by virtue of the legislative delegation.

We conclude that Jessen's position possesses the necessary criteria of a public officer within the meaning of art. XIII, sec. 3, Wisconsin Constitution.

Appellant argues that the constitutional provision does not apply to Jessen because his civil rights have been restored pursuant to sec. 57.078, Stats., which provides in relevant part:

---

down in respect for the law and confidence in government, the 1870 constitution effectuates the very strong public policy of this State that no public official who stands convicted of an infamous crime is eligible to hold public office.

*See also, State ex rel. Wier v. Peterson*, Del. Supr., 369 A.2d 1076 (1976).

[19] Though the Village of Lyndon Station has confidence in Jessen, state citizens outside of the village have an interest in ensuring some level of confidence in persons hired to enforce the laws of the state.

Civil rights restored to convicted persons satisfying sentence. Every person who is convicted of crime obtains a restoration of his civil rights by serving out his term of imprisonment or otherwise satisfying his sentence. The certificate of the department or other responsible supervising agency that a convicted person has served his sentence or otherwise satisfied the judgment against him is evidence of that fact and that he is restored to his civil rights.

Appellant contends that this statutory provision supercedes the effect of art. XIII, sec. 3 of the Wisconsin Constitution. If this were true, then convicted felons who serve their sentences may hold a public office. Article XIII, sec. 3, Wisconsin Constitution, expressly prohibits such a person from holding an office of trust, honor and profit. The legislature's power is subject to the limitations imposed by the state constitution. *Buse v. Smith,* 74 Wis.2d 550, 247 N.W.2d 141 (1976) ; *State ex rel. McCormack v. Foley,* 18 Wis.2d 274, 118 N.W.2d 211 (1962). Appellants' interpretation of the effect of sec. 57.078, Stats., would render the statute unconstitutional as it conflicts with the clear prohibition of art. XIII, sec. 3, Wisconsin Constitution.

This court will not interpret a statute in a manner which results in a finding of unconstitutionality if another equally reasonable interpretation would not produce such a result. *State ex rel. Strykowski v. Wilkie,* 81 Wis.2d 491, 261 N.W.2d 434 (1978) ; *State ex rel. McCormack,* 18 Wis.2d 274. Section 57.078, Stats., does not identify which "civil rights" are restored upon completion of a sentence. The legislative history indicates that the statute was primarily concerned with voting rights which are withheld pursuant to art. III, sec. 2, Wisconsin Constitution.[20] In a brief, later published as a law

[20] Art III, sec. 2, Wisconsin Constitution provides:

review article, submitted to the legislative interim committee which was considering sec. 57.078,[21] the revisor of statutes stated:

The clause "unless restored to civil rights" as used in the constitution is generally understood to refer to the right to vote. Sometimes, although seldom, it may be understood to refer to eligibility to public office. (Footnote omitted.) 1946 Wis. L. Rev. 281, 288–89.

As there is no analogous provision in art. XIII, sec. 3, Wisconsin Constitution, for a person convicted of an infamous crime to regain the right to hold public office once "civil rights" have been restored, it is reasonable to conclude that sec. 57.078, Stats., does not encompass the right to hold an office of trust, honor and profit. Such an interpretation preserves the constitutionality of sec. 57.078, and does not alter the mandate of art. XIII, sec. 3, Wisconsin Constitution.

Because we find that Jessen is a public officer, and precluded by art. XIII, sec. 3, Wisconsin Constitution, from holding the position of village police chief, it is not necessary to address the other issues raised by appellants challenging the constitutionality and validity of sec. LES 2.01(1)(d), Wis. Adm. Code.

*Constitutionality of Art. XIII, Sec. 3,
Wisconsin Constitution*

Amicus curiae argues that construing art. XIII, sec. 3 of the Wisconsin Constitution to exclude any person with a felony record from employment as a law enforcement

No person under guardianship, non compos mentis or insane shall be qualified to vote at any election; nor shall any person convicted of treason or felony be qualified to vote at any election unless restored to civil rights.

[21] Section 57.078, Stats., was enacted in ch. 477, Laws of 1947.

officer, violates art. VI, clause 2 and the fourteenth amendment to the United States Constitution. We conclude that the Village of Lyndon Station has no standing to assert such an argument.

[A] municipality, being a creature of the legislature and an instrumentality of the state, had no standing to attack the constitutionality of a statute on the ground that such a statute worked a denial of due process to the municipality in violation of the fourteenth amendment. *Associated Hospital Service v. Milwaukee*, 13 Wis. 2d 447, 468, 109 N.W.2d 271, 281 (1961).

The same reasoning applies to a municipality's attempt to attack the constitutionality of state constitutional provisions.

Municipalities may challenge the constitutionality of statutes or state constitutional provisions only in cases between a municipality and private citizens, *City of Madison v. Ayers,* 85 Wis.2d 540, 545, 271 N.W.2d 101 (1978), and not in suits between the municipal corporation and the state. *Dane County v. H&SS Dept.,* 79 Wis. 2d 323, 331, 255 N.W.2d 539 (1977).

### Estoppel

Appellants argue that because the state referred to Jessen's convictions as misdemeanors, it should be estopped from now attempting to terminate his employment.

Appellants claim that it relied upon two letters for its belief that Jessen had been convicted of misdemeanors.[22]

---

[22] The first letter from the Juneau County District Attorney dated July 30, 1972, to Jessen, reads in pertinent part:

Tomorrow morning the executive committee of the Juneau County Board of Supervisors will be signing a criminal complaint charging you with one count of felony embezzlement of $2524.00

██

However, "[a]s a general proposition, a government or one of its agencies is not subject to estoppel to the same extent as an individual. In order to establish estoppel, the acts of the state agency 'must amount to a fraud or a manifest abuse of discretion.'" (Citations omitted.) *Ryan v. Department of Revenue*, 68 Wis.2d 467, 470–71, 228 N.W.2d 357, 359 (1975). The word fraud used in this context is not used in its ordinary legal sense, but is used to mean "inequitable." *State v. City of Green Bay*, 96 Wis.2d 195, 203, 291 N.W.2d 508, 512 (1980).

██

The determination of who is eligible to be a public officer is an exercise of the state's police power.[23] Thus, one asserting estoppel against the state has a heavy burden.

We have not allowed estoppel to be invoked against the government when the application of the doctrine interferes with the police power for the protection of the public health, safety or general welfare. *Department of Revenue v. Moebius Printing Co.*, 89 Wis.2d 610, 639, 279 N.W.2d 213, 226 (1979).

and 26 *misdemeanor* counts of misconduct in public office. (Emphasis added.)

The second letter from Judge Barland, dated September 12, 1972, addressed to the Juneau County Clerk of Courts, reads:

If there be no objection entered within eight days from this date from Mr. Richard Kelly representing the State of Wisconsin or Mr. William Skemp representing William Jessen, *the misdemeanor* charges in the complaint are ordered transferred with the felony charge to Circuit Court for arraignment and trial. (Emphasis added.)

[23] The supreme court said in *State v. Interstate Blood Bank, Inc.*, 65 Wis.2d 482, 490, 222 N.W.2d 912, 916 (1974):

The police power of the state is the inherent power of government to promote the general welfare. It covers all matters having a reasonable relation to the protection of the public health, safety or welfare. (Citations omitted.)

The supreme court recently invoked estoppel against a state agency in *State v. City of Green Bay,* 96 Wis.2d 210, 291 N.W.2d at 515, but noted, "The estoppel defense is not being raised to bar the state from enforcing regulatory laws enacted for the public health and welfare. The estoppel defense is being raised to bar the state from collecting forfeitures."

As appellants did not sign an employment contract until after they were informed of the state's objections to their employing Jessen, their claim of reliance does not meet the heavier burden imposed in cases involving the state's police power.

### Mandamus as the Proper Remedy

Appellants argue that Jessen has a property interest in his employment which cannot be terminated without a due process hearing and to compel appellants to terminate Jessen's employment by means of mandamus would require them to violate Jessen's due process rights. Appellants cite *List v. Festge,* 9 Wis.2d 297, 302, 101 N.W. 2d 51 (1960), for the proposition that mandamus will not issue to compel the performance of an unlawful act or to enforce an unauthorized act.

A writ of mandamus will lie to compel a public officer to perform his prescribed duties. *Burns v. City of Madison,* 92 Wis.2d 232, 239, 284 N.W.2d 631 (1979). As the writ is discretionary, the trial court's order will not be reversed except for an abuse of discretion. It is an abuse of discretion for a court to compel an action through mandamus when the duty of the public officer is not clear and unequivocal and requires the exercise of discretion. *Burns,* 92 Wis.2d at 239. Mandamus will not lie if there are other adequate and specific remedies

at law. *State ex rel. Caledonia v. Racine County Court,* 78 Wis.2d 429, 430 n. 1, 254 N.W.2d 317 (1977).

Appellants' primary argument is that Jessen's constitutional rights will be infringed if the court requires the appellants to terminate him. As Jessen is not a party to this action, there is no party who has standing to assert the violation of his constitutional rights.

The Wisconsin Supreme Court recently noted in *Mast v. Olsen,* 89 Wis.2d 12, 16, 278 N.W.2d 205, 206–07 (1979):

This court has stated that a party has standing to raise constitutional issues only when his or her own rights are affected. He or she may not vindicate the constitutional rights of a third party. A party has standing to challenge a statute if that statute causes that party injury in fact and the party has a personal stake in the outcome of the action. *Scharping v. Johnson,* 32 Wis.2d 383, 395, 145 N.W.2d 691 (1966); *Milwaukee v. Milwaukee Amusement, Inc.,* 22 Wis.2d 240, 251, 125 N.W.2d 625 (1964). This court adheres to this rule of standing because a court should not adjudicate constitutional rights unnecessarily and because a court should determine legal rights only when the most effective advocate of the rights, namely the party with a personal stake, is before it.

Appellants also cite 52 Am. Jur. 2d *Mandamus* sec. 40 at 365 (1970), for the proposition that the trial court abused its discretion in granting the mandamus without considering (1) the urgency of the situation; (2) the equities of the parties; (3) the public policy or interest involved; and, (4) the question of whether if issued the writ will promote substantial justice or cause injustice, hardship or oppression.

Given our decision that art. XIII, sec. 3 of the Wisconsin Constitution prevents Jessen from holding the position of police chief, the Village of Lyndon Station had a

clear and unequivocal duty to discharge Jessen. In such a situation it is not necessary for the trial court to weigh the discretionary factors identified by the appellants. When a statute or constitutional provision clearly states a prohibition or confers a right, it is an abuse of the trial court's discretion to ignore the mandatory nature of the prohibition or right.

When confronted with a similar argument in *State ex rel. Dempsey v. Werra A.F. Co.*, 173 Wis. 651, 654, 182 N.W. 354, 355 (1921), the Wisconsin Supreme Court held that it would be an abuse of a trial court's discretion to deny a mandamus to enforce a clear legal directive:

This being a right conferred by statute as an integral part of the legislative scheme . . . courts cannot withhold the writ of *mandamus* to enforce that right without thwarting the legislative will. Judicial discretion should not be exercised to withhold the writ of *mandamus* to enforce a clear right conferred by statute when no other remedy is available to secure such right. To do so amounts to judicial assumption of legislative prerogatives, emasculates or annuls legislative enactments, and savors of judicial government.

As no other remedy aside from mandamus was adequate or appropriate, it would have been an abuse of the trial court's discretion to refuse to issue the writ. *Morrissette v. DeZonia*, 63 Wis.2d 429, 434, 217 N.W.2d 377 (1974).

Thus, we find that mandamus was the proper remedy in this case.

*By the Court.*—Order and judgment affirmed.

BABLITCH, J. *(Dissenting.)* I disagree with the majority's interpretation of art. XIII, sec. 3 of the Wisconsin Constitution. That interpretation is far broader in its effect than the administrative regulation challenged on this appeal.

Section LES 2.01 (1) (d), Wis. Adm. Code, only withholds employment in law enforcement from those who have been convicted of a federal felony "or of any offense which if committed in Wisconsin could be punished as a felony" unless the individual has received a pardon. Under the majority's holding any individual who has ever been convicted of any felony—regardless of when, where, the nature of the offense and whether the offense is characterized as a felony in this state—is forever prohibited from any public office even if he has been pardoned, is rehabilitated, and is otherwise eminently suited for the job.

The majority holding is grounded on the proposition that *every* felony is, by definition, an "infamous crime" within the meaning of art. XIII, sec. 3. The only Wisconsin authority offered for this proposition is a single sentence in *Becker v. Green County,* 176 Wis. 120, 184 N.W. 715 (1922). The case involved a judge who had been removed from office after being convicted of espionage. The supreme court said it had "no doubt" that espionage was an infamous crime within the meaning of the constitution. Few would quarrel with that conclusion. 176 Wis. at 124, 184 N.W. at 717. It then stated at the same page:

While there has been much debate as to what constitutes an infamous crime, we think, by the great consensus of authority upon the subject, it is now deemed to mean as here used—a crime punishable by imprisonment in the state prison. 12 Cyc. 135; Words & Phrases, 3573 *et seq.*

*Becker* has not been cited by the supreme court in the nearly sixty years since it was decided. The quoted statement was unnecessary to the court's holding in that case, and provides dubious support at best for the majority holding that the constitutional provision automatically bars all ex-felons from ever holding public office in this state.

It should be noted that the prohibition, construed to embrace all felonies, extends to persons convicted of shoplifting[1] and adultery,[2] for example, as well as to those convicted of espionage, murder, treason, and other such crimes as are commonly viewed as bringing infamy upon the heads of their perpetrators.[3] Article III, sec. 2 of the Wisconsin Constitution specifically disqualifies persons convicted of a "felony" from voting unless they are restored to civil rights.[4] Since the constitutional framers specified "infamous crime" instead of "felony" in art. XIII, sec. 3, it logically follows that they intended the unconditional ban against holding public office to apply to a different class of persons. I view that class as being narrowed by the adjective "infamous" to those persons whose acts have rendered them irretrievably unworthy of public trust.

[1] Under sec. 943.50(4), Stats. (1975), one who shoplifted goods worth $100 or less was guilty of a misdemeanor, and one who shoplifted goods in excess of that amount was guilty of a felony. The delineation under the current statute is $500.

[2] Under sec. 944.16, Stats. (1975), adultery was punishable by imprisonment of up to three years. The present statute characterizes the crime as a Class E felony, which is punishable by imprisonment up to two years. The crime of fornication, by contrast, has been classified as a misdemeanor under both the 1975 and the current versions of sec. 944.15.

[3] *Amicus* observes in its brief that the delegate to the constitutional debates who proposed the language which became art. XIII, sec. 3 of the constitution defined an "infamous crime" at that time as one "such as murder, arson or forgery." *The Convention of 1846*, Milo M. Quaife, ed., State Historical Society, Madison, Wisconsin, 1919, p. 206.

[4] Article III, sec. 2 of the Wisconsin Constitution provides:

Who not electors. SECTION 2. No person under guardianship, non compos mentis or insane shall be qualified to vote at any election; nor shall any person convicted of treason or felony be qualified to vote at any election unless restored to civil rights.

As *amicus* notes, a Delaware court has taken a case-by-case approach in construing similar language in that state's constitution. The court said:

[E]very felony is [not] necessarily a crime of infamy; . . . the totality of the circumstances in each case must be examined before a determination may be made that a specific felony is infamous. *State ex rel. Weir v. Peterson,* 369 A.2d 1076, 1079 (Del. Super. Ct. 1976).

It seems to me that this approach is more cautious, and sounder, than that taken by the majority. This is particularly so in light of the several cases cited by *amicus* and the appellants which hold that various forms of legislation providing for the disqualification of felons from many types of employment opportunities are invalid under the due process or equal protection clause of the federal constitution.

Representative of those cases are *Smith v. Fussenich,* 440 F. Supp. 1077 (D. Conn., 1977) and *Butts v. Nichols,* 381 F. Supp. 573 (S.D. Iowa, 1974). In *Smith* a three-judge panel of the district court held that a Connecticut statute prohibiting felony offenders from employment with licensed private detective or security guard agencies was invalid under the equal protection clause and probably under the due process clause as well. The court said:

The critical defect in the blanket exclusionary rule here is its overbreadth. The statute is simply not constitutionally tailored to promote the State's interest in eliminating corruption in certain designated occupations. The legislation fails to recognize the obvious differences in the fitness and character of those persons with felony records. Felony crimes such as bigamy and income tax evasion have virtually no relevance to an individual's performance as a private detective or security guard. In addition, the enactment makes an irrational distinction between those convicted of felonies and those convicted of misdemeanors. Hence, a person is eligible for licensure

even though he was convicted of a crime (larceny, false entry, inciting to riot and riot) which may demonstrate his lack of fitness merely because that crime is classified as a misdemeanor under the Connecticut code. Cf. *Butts v. Nichols,* supra at 580.

Moreover, the statute's across-the-board disqualification fails to consider probable and realistic circumstances in a felon's life, including the likelihood of rehabilitation, age at the time of conviction, and other mitigating circumstances related to the nature of the crime and degree of participation. We believe it is fair to assume that many qualified ex-felons are being deprived of employment due to the broad sweep of the statute. 440 F. Supp. at 1080.

A similar rationale was employed in *Butts,* 381 F. Supp. at 580, which invalidated a statute banning felons from civil service employment.

By enacting a blanket prohibition on all ex-felons, a clearly anomalous situation results. For example, persons convicted of such diverse crimes as desertion of a spouse . . . or leading life of lewdness . . . would be sentenced as felons, and hence would lose civil service eligibility, no matter what the nature of their job. In contrast, an individual convicted of a crime clearly involving dishonesty, such as petty larceny . . . would not be a felon, and hence would be eligible for a number of civil service jobs wherein such "criminal propensities" would pose a threat to the public (e.g., an inspector with free access to persons' homes).

Recent court decisions have shown a particular sensitivity to the punitive effects across-the-board "felon bans" can have on individuals seeking to rehabilitate themselves, and accordingly have demanded a precision of classification which would avoid the adverse effects of statutes such as the one at issue here. (Citations omitted; footnotes omitted.)

I find the reasoning of these cases persuasive. I do not understand the majority's conclusion that we should not consider the issue of the validity of a blanket ban under the United States Constitution because the parties

are without standing to attack the Wisconsin Constitution. Neither party has made an attack on the state constitution. *Amicus* has instead argued that this court should avoid a construction of art. XIII, sec. 3 which would render it unconstitutional under the fourteenth amendment to the federal constitution. Clearly it is our duty to do just that.[5] Surely a party has standing to urge that duty upon us, even if it might not have standing to challenge state legislation directly.

I agree with *amicus* that to construe art. XIII, sec. 3 as creating an irrebuttable presumption that any person convicted of any felony is forever disentitled from holding public office renders the provision invalid under the federal constitution. That construction also violates the legislative policy underlying the recent amendments to the Wisconsin Fair Employment Act in ch. 125, Laws of 1977, which prohibit discrimination in employment or licensing based upon an arrest or conviction record unless the circumstances of the charge or offense, whether misdemeanor or felony, "substantially relate to the circumstances of the particular job or licensed activity." Sec. 111.32(5), (h)2b, Stats. The same principle was adhered to by the supreme court in *Reidinger v. Optometry Examining Board,* 81 Wis.2d 292, 298, 260 N.W.2d 270 (1977), which held that an optometrist's license to practice in Wisconsin could not be revoked for the sole reason that he had been convicted of felony income tax evasion. The court noted that the Optometry Board had failed to demonstrate any relationship between the particular felony conviction and the optometrist's fitness to practice his profession.

The state undoubtedly has a high interest in protecting the public's confidence in government and in ensur-

[5] *DH&SS v. State Personnel Board,* 84 Wis.2d 675, 683, 267 N.W.2d 644 (1978); *In re City of Beloit,* 37 Wis.2d 637, 643, 155 N.W.2d 633 (1968); 2A Sands and Sutherland, *Statutes and Statutory Construction,* sec. 45.11 (4th ed. 1973).

ing that public offices are not misused for private gain, as the majority notes. It also has a high interest in identical goals with respect to the many professions it licenses to serve the public. I think the former interest is no better served than the latter by an across-the-board exclusion of a large class of individuals who may have committed a single act, remote in time, then characterized as felonious but having no "rational connection" to the office they subsequently seek to hold. *Schware v. Board of Bar Examiners*, 353 U.S. 232, 239 (1957).

For these reasons I would hold that the administrative regulation in question is subject to the provisions of the Wisconsin Fair Employment Act, as amended, and that the Law Enforcement Standards Board could not lawfully require the discharge of this village police chief absent a factual showing that the circumstances of his conviction "substantially relate to the circumstances" of his office. The question whether his particular crime constitutes an "infamous crime" within the meaning of the Wisconsin Constitution may be appropriate for determination in a later proceeding. I think we need not and ought not address that question on this appeal.