DAVID A. DANZ, District Attorney Walworth County
You request my opinion on this question: Does section 895.46, Stats., cover members of a joint commission formed by two or more municipalities under the authority of section 66.30 for the purpose of constructing, operating and maintaining a wastewater treatment facility?
By way of background, you state:
 The Village of Fontana-on-Geneva Lake and the Village of Walworth, Walworth County, Wisconsin, pursuant to Wisconsin Statute Section 66.30, established a Commission by intergovernmental agreement (written contractual agreement) for the purpose of constructing, operating and maintaining a joint wastewater treatment facility. The intergovernmental agreement provides that the Commission shall consist of three members from each Village Board, to be appointed by the President and confirmed by the full Village Board. In addition, each Village President shall appoint a citizen member to serve on the commission. The citizen members are also subject to confirmation by their respective Village Board. The Commission consists of eight voting members, four from each Village. Kikkoman Foods, Inc., a privately owned Wisconsin corporation located in the Town of *Page 209 
Walworth, Walworth County, Wisconsin, entered into a contractual agreement with the Village of Fontana-on-Geneva Lake, the Village of Walworth and the Fontana/Walworth Pollution Control Commission to use the joint municipal wastewater treatment facility for the disposal of its wastes. Kikkoman Foods, Inc. is authorized to appoint one member to the Commission who sits only in an advisory capacity and has no voting power.
 The Commission's primary responsibility is to construct, maintain and operate the joint wastewater treatment facility. The Commission does not have authority to incur indebtedness or to borrow funds. All funds for the capital cost of the wastewater treatment facility have been paid by the Village of Fontana-on-Geneva Lake, the Village of Walworth and Kikkoman Foods, Inc. The maintenance and operational costs for the wastewater treatment facility will be financed by user charges paid to the Commission by the Village of Fontana-on-Geneva Lake, the Village of Walworth and Kikkoman Foods, Inc., based upon the amount and kind of wastes supplied to the wastewater treatment facility by each of the users.
From your statement, it appears that the "joint commission" referred to in your question is one established pursuant to section 66.30 "for the purpose of constructing, operating and maintaining a joint wastewater treatment facility." It further appears that such commission is comprised of three elements: the first being voting members of such commission drawn from the boards of the municipalities which are a party to the intergovernmental agreement (hereinafter "the Agreement") creating the joint commission (hereinafter "the Commission"); the second being voting citizen members of the Commission appointed by the governmental parties to the Agreement; and the third being a non-voting member of the Commission appointed by a private party which has entered into a contract with the Commission, and with the municipalities which are party to the Agreement, relating to the use of the joint wastewater treatment facility.
In pertinent part, section 895.46, reads:
 (1)(a) If the defendant in any action or special proceeding is a public officer or employe and is proceeded against in an official capacity or is proceeded against as an individual because of acts *Page 210 committed while carrying out duties as an officer or employe and the jury or the court finds that the defendant was acting within the scope of employment, the judgment as to damages and costs entered against the officer or employe in excess of any insurance applicable to the officer or employe shall be paid by the state or political subdivision of which the defendant is an officer or employe. Agents of any department of the state shall be covered by this section while acting within the scope of their agency . . . . (Emphasis supplied.)
From this portion of section 895.46, it is clear that its indemnification protection extends only to three categories of individuals: 1) public officers; 2) public employes; and 3) the "agents of any department of the state," referred to elsewhere in section 895.46 simply as an "agent of the state" or "agent."
In giving you my opinion, I will first consider whether a voting member of the Commission, who is also a board member of one of the governmental parties to the Agreement, is a public officer, public employe or agent of a department of the State of Wisconsin; then whether a voting citizen member of the Commission is such officer, employe or agent; and finally whether a non-voting citizen member of the Commission is such officer, employe or agent.
A.
(1)
Is a voting member of the Commission who is also a member of the governing board of a municipality which is a party to the Agreement (with such member hereinafter called "voting board member") a public officer, and therefore covered by section895.46? In my opinion, yes.
In answering this question, I have first concluded that the Commission is a governmental body or instrumentality performing a governmental function. It is an agency or instrumentality created by a contract (the Agreement) between two Wisconsin villages, made pursuant to section 66.30. In pertinent part, subsection (2) thereof provides that,
 In addition to the provisions of any other statutes specifically authorizing cooperation between municipalities, unless such statutes specifically exclude action under this section, any municipality *Page 211 may contract with other municipalities, for the receipt or furnishing of services or the joint exercise of any power or duty required or authorized by law . . . . (Emphasis supplied.)
The Agreement is clearly a contract for the joint exercise of a power possessed by the contracting villages: namely, the municipal police power of sewage collection and disposal, or, put otherwise, the municipal police power to operate a sewerage system.[1] See section 24.256, Vol. 7, McQuillin Municipal Corporations, 3rd Ed. Rev. (1981). Such power is provided Wisconsin villages under the broad language of subsection (1), section 61.34, which states, inter alia, that a village board "shall have power to act for the government and good order of the village, for its commercial benefit and for the health, safety, welfare and convenience of the public . . . ." The existence of such power is further recognized by certain aspects of subsections (3) and (5), section 61.34, section 61.36 and portions of chapter 144, as, e.g., sections 144.01 (9) and 144.04-144.07. Moreover, a joint exercise of such particular power by villages is not only sanctioned by section 66.30, but also by subsection (2) of section 61.34.
The Commission is the governmental instrumentality or body created by the Agreement for the joint exercise of power involved in what the opening paragraph of the Agreement describes as "a single contractual relationship for the joint participation in the collection, treatment and disposal of sewage . . . ." That it is such instrumentality is unequivocally shown by the delegation to it, in the Agreement, of "all such powers as hereinafter stated which are necessary for the acquisition, construction, maintenance, and operation of Wastewater Collection, Treatment, and Disposal Facilities to service all of the Villages of Fontana and Walworth . . . ."
Having concluded, then, that the Commission is a governmental instrumentality or body, it is my further conclusion that a voting board member of the Commission is a public officer.[2] *Page 212 
It appears that no reported case has defined the meaning of "public officer" as that term is employed in section 895.46
(1)(a). However, the case of Martin v. Smith, 239 Wis. 314,1 N.W.2d 163 (1941), has been described as "The leading case in Wisconsin establishing criteria to determine whether one is a public officer or a mere employe . . . ." Burton v. State AppealBoard, 38 Wis.2d 294, 299, 156 N.W.2d 386 (1968) (hereinafter "Burton"); this despite the fact that Martin v. Smith was concerned only with "addressing the definition of a `public officer' in the context of art. XIII, sec. 3 of the Wisconsin Constitution." Wis. Law Enforce Stds. Bd. v. Lyndon Station Vil.,98 Wis.2d 229, 240, 295 N.W.2d 818 (Ct.App. 1980) (hereinafter "Lyndon Station Vil."). Martin v. Smith, 239 Wis. at 332, quoted with approval the definition of "public office" found in a Montana case, with such definition listing several required aspects of such office, including the necessary possession of "a delegation of the sovereign power of government to be exercised for the benefit of the public." As to this particular feature of a "public office," it was recognized by the Martin court as thesine qua non for public office, with the report stating, "It is certain that a person employed cannot be a public officer, however chosen, unless there is devolved upon him by law theexercise of some portion of the sovereign power of the state inthe exercise of which the public has a concern." (Emphasis supplied; 239 Wis. at 332). See also Burton, 38 Wis.2d at 300,301. Both the Supreme Court of Wisconsin and its Court of Appeals have also recognized that for a position to be a "public office," it need not meet all the criteria for public office set forth in the above-mentioned definition of Martin v. Smith. See Burton,38 Wis.2d at 303; Lyndon Station Vil., 98 Wis.2d at 244. The "principal consideration determining whether a position is a [public] office and one holding it is a [public] officer is thetype of power that is wielded" (bracketed material and emphasis supplied: Burton, 38 Wis.2d at 300).
A voting board member of the Commission exercises a portion of the sovereign power of government for the benefit of the public. This is so because under the Agreement the Commission jointly exercises the municipal police power possessed by each of the contracting villages to operate a sewerage system. And when the voting board member uses his voting power to effect or to reject the taking *Page 213 
of some action by the Commission constituting the joint exercise of such power, he/she is, in my opinion, definitely exercising a portion of the sovereign power of government for the benefit of the public. Moreover, when a voting board member acts as an officer of the Commission, he/she is then engaged in an exercise of a portion of such sovereign power.
The Agreement, providing that "the Commission shall exercise the powers of the Contracting Municipalities with respect to constructing, operating, maintaining, managing and administering Wastewater collection, treatment, and disposal facilities for the Contracting Municipalities and other Customers," bestows on the Commission a formidable array of powers. For example, the Commission has "the power to make investigations and inspections of all Customers and all local Sewer Systems" and to "develop surveillance and monitoring procedures to assure compliance with any regulation of the Commission," and the power to issue a "Cease and Desist Order" to a customer violating the Agreement, or any regulation of the Commission. A voting board member using his voting power in connection with the Commission's exercise of such powers is very plainly exercising a portion of the sovereign power of government for the public benefit.
The Rules of Procedure of the Commission designate six Commission officers, and spell out their powers and duties in detail. The description of the powers and duties of the President, Secretary and Treasurer of the Commission, which may also be exercised and discharged by, respectfully, the Vice-President, Deputy Secretary and Deputy Treasurer, leaves no doubt in my mind that a voting board member, acting in any one of such offices, is engaged in an exercise of a portion of such sovereign power.
It should be noted that many of the powers conferred on the Commission by the Agreement are exercised independently, i.e., without control of any superior power other than the law. This independent exercise of power by a governmental body is essential to viewing the power exercised as falling within the "portion of the sovereign power of government to be exercised for the benefit of the public" which must be delegated to a governmental post before it can be properly deemed a "public office." See Burton,38 Wis.2d at 301; Martin v. Smith, 239 Wis. at 314; LyndonStation Vil., 98 Wis.2d at 241-42. *Page 214 
Certain of the Commission's powers are subject to control of the Contracting Municipalities. However, the fact that such powers of the Commission are so controlled and, therefore, not independently exercised by it, does not mean that its independent exercise of a substantial portion of its powers fails to satisfy the "independent exercise of sovereign power" criterion for public office. I have found no case law holding that one exercising a portion of sovereign power in a governmental position must be denied recognition as a public officer because he/she also exercises powers subject to the control of others. Logic clearly militates against such a holding. Moreover, LyndonStation Vil., supra, implies a holding that one occupying a governmental post and exercising a portion of the sovereign power independently is a public officer, despite the fact that such person is subject in certain respects to control of the superior body or officer. Lyndon Station Vil. involved the issue of whether a village police chief was an officer subject to the provisions of article XIII, section 3 of the Wisconsin Constitution, which renders a person convicted of an infamous crime ineligible to any office of trust, power or profit in Wisconsin. Finding the police chief subject to such constitutional provision, the Court viewed as one of the "most important" of such chiefs powers "the authority to arrest as authorized in section 61.28" (98 Wis.2d at 241-42), specifically pointing out that such power is not subject to the authority of the village board and then stating: "Thus, for purposes of article XIII, section 3 of the Wisconsin Constitution a village police chief does possess a delegation of a portion of the sovereign power of government to be exercised for the benefit of the public. Martin, 239 Wis. at 332." (Id.) The Court so held despite the fact that the statutes cited by it as descriptive or the power wielded by the village police chief clearly show that by no means were all of his powers exercised independently, with section 61.28 providing that he "shall obey all lawful written orders of the village board," and section 60.54 (2) giving him the power to attend upon sessions of his county's circuit court "when required by the sheriff." The Court's decision clearly implies, I believe, a holding that one can meet the "independent exercise of sovereign power" criterion even though he/she may, in the exercise of some of his/her powers, be subject to the control of others.
While it is my opinion that it suffices to establish that a voting board member is a public officer when he/she exercises independently *Page 215 
a portion of the sovereign power, despite the control exercised by others over certain of the Commission's powers, it is certainly noteworthy that the position occupied by such member on the Commission meets another important test of "public office," to wit, that such position "must have some permanency and continuity, and not be only temporal or occasional." Martin v.Smith, 239 Wis. at 332; Burton, 38 Wis.2d at 300, 302; LyndonStation Vil., 98 Wis.2d at 240, 242. The position of a voting board member clearly has "some permanency or continuity," since the Agreement expressly provides that "the commissioners appointed by the president of the Governing Bodies from the Governing Body membership shall be permanent members on the Commission and shall continue to serve as long as they continue to be members of the Governing Body of the respective Contracting Municipalities." (Emphasis supplied.)
It is true that the position of the voting board member of the Commission does not meet all of the tests of public office laid down in Martin v. Smith, as, e.g., entry into it by the taking of an oath. Such position, however, does meet the quintessential test of "independent exercise of sovereign power," and Wisconsin case law clearly holds that a position may be a public office without meeting "all criteria listed in Martin." See LyndonStation Vil., 98 Wis.2d at 244.
(2)
The voting board member of the Commission being, in my opinion, a public officer, there is therefore no need to consider whether he/she is an employe of the Commission, except to state that his/her status as a public officer makes it clear that he/she is not a public employe. It is also unnecessary for me to consider whether the voting board member is an agent of any department of the State of Wisconsin.
B.
(1)
Are the voting members of the Commission who are not members of the Governing Bodies of the Contracting Municipalities, but who are citizen/residents of such municipalities (one for each of them, appointed by the governing body thereof) public officers, and *Page 216 
therefore covered by section 895.46? In my opinion, Yes, for the same reasons that a voting board member of the Commission is a public officer.
While the position of a voting citizen member of the Commission possesses, as does the position of a voting board member thereof, the "some permanency and continuity" characteristic of public office, the former position might be said to enjoy less by way of "permanency and continuity" than the latter, but clearly not so much less as to make the former position one "only temporal or occasional." As noted, the voting board member is a "permanent member of the Commission," who continues to serve as such so long as he/she is a member of the governing body of one of the Contracting Municipalities. The voting citizen members, however, have their terms fixed by the Agreement in the following language:
 "The appointed citizen-resident from Fontana shall serve for a term of one year from and after the date of the Agreement; the appointed citizen-resident from Walworth shall serve for two years from and after the date of this Agreement. Terms of the appointed citizen-resident members of the Contracting Municipalities shall be staggered so that upon the expiration of the one year term of the commissioner from Fontana, the next appointed member from Fontana shall serve for two (2) years. The terms of succeeding commissioners from Fontana and Walworth shall be for two (2) years (p. 18, Agreement).
(2)
Again, with respect to the voting citizen member of the Commission, my opinion that he/she is a public officer makes it unnecessary for me to address the questions of whether he/she is a public employe or an agent of any department of the state.
C.
(1)
Is the non-voting member of the Commission, appointed by a private party which has entered into a contract with the Commission and with the Contracting Municipalities, a public officer, so as to be covered by section 895.46? In my opinion, No. *Page 217 
As the Agreement shows, such non-voting member of the Commission is a "permanent member thereof who represents Kikkoman Foods, Inc. His/her limited function on the Commission, in a nonvoting, advisory capacity, is plainly evidenced by (a) the statement in the Agreement that, "In recognition of Kikkoman Foods, Inc.'s contribution toward the cost of the construction of the joint sewage treatment facility, Kikkoman Foods, Inc. shall be entitled to a permanent representative on the Commission in anon-voting capacity to provide input relating to their [sic][Kikkoman's] particular needs" (emphasis supplied); and (b) by the provision in Section 3 of the Commission's Rules of Procedure that, "the non-voting member from Kikkoman Foods, Inc., shall not be eligible to hold any office on the Commission."
In view of such provision, I believe it plain that since the nonvoting member cannot serve as an officer of the Commission, he will have no opportunity as such officer to exercise any portion of the sovereign power of government. Further, the non-voting citizen member of the Commission is denied any exercise of such power by the fact that he/she is powerless to vote for or against action of the Commission, constituting an exercise of the sovereign power of government. It follows, then, that the non-voting citizen member of the Commission, denied in such capacity the exercise of any portion of such sovereign power by reason of his/her inabilities to vote and to hold Commission office, is plainly not a public officer because the position he/she holds on the Commission lacks the quintessential attribute of public office namely possession of a portion of the sovereign power of government.
It is true, of course, that the advisory role of the non-voting citizen member may conceivably have some impact on the voting of the voting members of the Commission. But it is the possession of a portion of the sovereign power of government, and not merely the possession of an ability to have some advisory influence on its exercise, which is the indispensable attribute of public office.
It is also true that the non-voting citizen-member's position on the Commission does have the "permanency" attribute of a public office; but it is clear that such attribute, standing alone, does not make a public office. *Page 218 
Is the non-voting member of the Commission, though not an officer thereof, its employe? In my opinion, no.
Such member of the Commission is not an employe thereof, if only for the reason that the Agreement, providing that he/she serves on the Commission "in a non-voting capacity to provideinput relating to their [sic] [Kikkamon's] particular needs" (emphasis supplied), and referring to "The non-voting commissioner representing Kikkamon Foods, Inc.," (emphasis supplied), makes it amply clear that such commissioner is in no sense the servant or employe of the Commission, but rather the servant and employe of Kikkamon, who functions solely as a conduit through which there passes to the Commission "input" relating to the "particular needs" of Kikkamon. This is further shown by the provision of the Agreement that "Kikkamon Foods, Inc., shall have the right to designate the individual to serve as said [non-voting] commissioner and may substitute individuals in their [sic] discretion as business needs arise," and by the fact that there is no provision, either in the Agreement or in the Commission's Rules of Procedure, for payment by the Commission to the non-voting member of any wage, salary or other form of remuneration for his/her services on the Commission.
Still another factor showing that the non-voting member of the Commission is not an employe thereof is that he clearly does not serve as a subordinate, which service is characteristic of the public employe. See Martin v. Smith, 39 Wis. at 332-33. Instead, the Commission manifestly has no direction or control over the nonvoting member's "input," no matter how unpalatable it might on occasion prove to be to the Commission.
(3)
Is the non-voting member of the Commission an agent of any department of the State of Wisconsin, and therefore covered by section 895.46? In my opinion. he/she clearly is not such agent.
The Legislature, employing the term "agents of any department of the state" in subsection (I) of section 895.46 did not use such term in so broad or loose a sense as to encompass a body such as the Commission, which is plainly not a department or agency of the *Page 219 
State of Wisconsin, but is instead an instrumentality or agency of the contracting political subdivisions of the state here involved.
BCL:JHM
[1] This is plain from the opening paragraph of the Agreement, which reads: "THIS AGREEMENT made and entered into as of this 3rd day of December, 1984, between the Village of Fontana-on-Geneva Lake, Wisconsin ("Fontana"), and the Village of Walworth, Wisconsin ("Walworth"), municipal corporations and political subdivisions of the State of Wisconsin, all pursuant to section 66.30 of the Wisconsin Statutes, 1983, as amended, to establish asingle contractual relationship for the joint participation inthe collection, treatment, and disposal of sewage and creation ofFontana/Walworth Water Pollution Control Commission("Commission")."
[2] Were it my conclusion that the Commission is not a governmental instrumentality or body, it would then logically follow that neither an officer nor employe of the Commission would have the "public" status entitling him/her to the indemnification protection of section 895.46. See 71 Op Att'y Gen. 127 (1982).