STATE of Delaware ex rel. Attorney General Richard R. WIER, Jr., et al.,
Plaintiffs,

v.

Edward Francis PETERSON,
Defendant.

Supreme Court of Delaware.

Submitted Oct. 6, 1976.

Decided Oct. 7, 1976.

Opinion Dec. 29, 1976.

Richard R. Wier, Jr., Atty. Gen., State of Delaware, Norman A. Barron, State Solicitor, Wilmington, and Milton P. Shafran, Deputy Atty. Gen., for plaintiffs.

Harvey B. Rubenstein, Wilmington, and Clifford B. Hearn, Jr., of Balick & Hearn, P. A., Wilmington, for defendant.

Before HERRMAN, C. J., and DUFFY and McNEILLY, JJ.

DUFFY, Justice:

This certification proceeding arises from an action filed in the Superior Court by the Attorney General and the Board of Elections, Department of Elections for

New Castle County (plaintiffs), seeking a declaratory judgment concerning defendant's eligibility to hold the Office of President of New Castle County Council.[1] The following questions of law were certified and accepted by this Court:

"1. Does not Article II, § 21, of the Delaware Constitution render Edward F. Peterson incapable of holding the office of President of New Castle County Council and ineligible for election to that office?

A. Do the provisions of Article II, § 21, of the Delaware Constitution apply to a candidate for the county-wide office of President of New Castle County Council?

B. If the Answer to A is Yes, are any or all of the following offenses 'infamous crimes' within the provisions of Article II, § 21, of the Delaware Constitution: Sodomy; assault with intent to ravish; indecent assault; aggravated assault and battery; assault and battery?

C. If the answer to B is Yes, is a conviction of such crime(s) in Pennsylvania a conviction under the provisions of Article II, § 21, of the Delaware Constitution?

D. If the answer to C is Yes, what effect does a Pennsylvania pardon on such a conviction on a Delaware resident have on the applicability of Article II, § 21, to such resident who is seeking election to an 'office of trust, honor or profit under this State'?

E. Does a pardon which does not on its face cover one or more convictions apply to such convictions?"

We discuss the questions *seriatim*.[2]

## I.

Defendant was an appropriately certified candidate of the Democratic Party for the Office of President of New Castle County Council in the general election held on November 2, 1976. In the years 1949 and 1952, he had been convicted in the Commonwealth of Pennsylvania of the offenses stated in Question 1B. In 1969, defendant received a pardon from the Governor of that Commonwealth covering some or all of such offenses. After defendant had been certified as a candidate, the Attorney General and the other plaintiffs filed this action, alleging that defendant was ineligible to hold the office he sought because of the provisions of Art. II, § 21 of the Delaware Constitution.[3] Defendant joined issue on that contention, and this certification followed.

## II.

The first question was whether the Office of President of the New Castle County Council is an office within the scope of Art. II, § 21. At the present time, there is not a Delaware decision dispositive of this issue.

1. Del.Const., Art. 4, § 11(9) provides that the Supreme Court shall have jurisdiction:
   "To hear and determine questions of law certified to it by the Court of Chancery, Superior Court or Orphans' Court where it appears to the Supreme Court that there are important and urgent reasons for an immediate determination of such questions by it. The Supreme Court may by rules define generally the conditions under which questions may be certified to it and prescribe methods of certification."
   See also Supreme Court Rule 20.

2. Because of the limited time period between the date of submission of the issues for decision by this Court and the date of the general election, we answered the Questions on October 7, 1976, by Judgment Order with this Opinion to follow.

3. The Delaware Constitution, Art. II, § 21 provides:
   "No person who shall be convicted of embezzlement of the public money, bribery, perjury or other infamous crime, shall be eligible to a seat in either House of the General Assembly, or capable of holding any office of trust, honor or profit under this State."

■ Under our constitutional scheme a county is a political subdivision of the State without an independent or self-supporting life of its own. It is a political subdivision of our State, *State v. Warwick*, Del.Super., 9 Terry 568, 108 A.2d 85 (1954), "created, organized and existing for civil and political purposes, particularly for the purpose of administering locally the general powers and policies of the state . . . ." 20 C.J.S. Counties § 1, at 754–755. New Castle County is such an entity deriving its existence, 9 Del.C. § 101, its boundaries, 9 Del.C. § 102, and its authority to govern directly from the State. 9 Del.C. § 1101, et seq.

■ While the viability of county government is derived entirely from the State, it does not automatically follow that a county officer is an officer "under this State," which is the requirement of Art. II, § 21. On the contrary, a county officer will be regarded as an officer of the State only when his Office "embraces the right to exercise a state function or employment" and possesses "the authority and duty to exercise some part of the sovereign power of the state either in making, administering or executing the laws of the State." *State ex rel. Biggs v. Corley*, Del.Ct.Banc., 6 W.W.Harr. 135, 172 A. 415, 419 (1934). See *Opinon of the Justices*, Del.Supr., 245 A.2d 172, 174 (1968). Accordingly, we must determine whether the Presidency of the New Castle County Council is such an office.

■ By statute, the New Castle County Council is the legislative branch of the County government. 9 Del.C. § 1146. Its President is authorized to preside over that body and is vested with all the powers of a county legislator. 9 Del.C. § 1145(a). Since the County is a political subdivision of the State entitled to exercise some of its sovereign powers, (for example, the zoning power, 9 Del.C. § 2601–2611, and the power to levy and collect taxes, 9 Del.C. § 8001 et seq.), it follows that the Office of President of New Castle County Council is an "office of trust, honor or profit under this State" within the meaning of Art. II, § 21. Compare *Raduszewski v. Superior Court,* Del.Supr., 232 A.2d 95 (1967); *State ex rel. Green v. Glenn,* Del.Super. (3-Judge Court), 9 W.W.Harr. 584, 4 A.2d 366 (1939); *Wood v. Miller,* 154 Ark. 318, 242 S.W. 573 (1922); *Willis v. Potts,* Tex., 377 S.W.2d 622 (1964); 63 Am.Jur.2d *Public Officers and Employees* § 11; 67 C.J.S. *Officers* § 5b; Mechem on *Public Officers* § 1.

III.

■ The next question was whether any of the offenses stated in Question 1B are "infamous crimes" within the meaning of the Delaware Constitution. In *Fonville v. McLaughlin,* Del.Supr., 270 A.2d 529, 530 (1970); this Court affirmed a Superior Court determination that grand larceny, a "felony," is an "infamous crime" within the meaning of Art. II, § 21. It does not follow from that opinion, however, that *every* felony is necessarily a crime of infamy; on the contrary, the totality of the circumstances in each case must be examined before a determination may be made that a specific felony is infamous.

Here, the record shows that in 1949 defendant pleaded guilty to an indictment charging that he "with force and arms, . . . did carnally know . . . a female personally by feloniously forcing . . . [her] to submit to carnal knowledge" (in the way described in the indictment) in violation of P.L. 872 § 501; 18 P.S. § 4501. We hold that a conviction for felonious sodomy, under the circumstances in the record before us, is a conviction of an infamous crime within the meaning of our Constitution. As to the other offenses, we deem it unnecessary to answer the question.

IV.

■ The third question certified was whether a foreign conviction of an infa-

mous crime is a "conviction" within the meaning of Art. II, § 21. A majority of states which have considered this problem have held that the term "conviction", when used in such a specific disability provision, includes a foreign conviction. See The Collateral Consequences of a Criminal Conviction, 23 *Vand.L.Rev.*, 929, 961, n. 145 (1970) and the cases cited therein. We approve and adopt such majority view for Delaware.

It seems plain that this provision was designed to prohibit a person, after a conviction of the kind specified, from exercising the authority of Government. Implementation of that purpose requires, of course, that an ineligible candidate not be placed on the ballot. And, in our view, the constitutional purpose would not be served by narrowly construing Art. II, § 21 to include only forum convictions. We say this because it is the nature of the offense which renders a person ineligible to hold public office, not the place where it occurred. Here, the sodomy took place in our neighboring State of Pennsylvania and, at the time, the act was a felony under Delaware law as well as under Pennsylvania law. Under these circumstances we hold that the Pennsylvania conviction is a conviction within the scope of Art. II, § 21 of the Delaware Constitution.

## V.

Finally, there was the central question presented in this certification: what is the effect of the Pennsylvania pardon on the applicability of Art. II, § 21, to a resident seeking election to an "office of trust, honor or profit under this State."? There is neither a Delaware or Pennsylvania decision dispositive of this issue.

While there may be doubt as to whether the pardon technically reaches all of the convictions, we assume for present purposes that it does.

Relying on the broad language of *Ex parte Garland*, 4 Wall. 333, 18 L.Ed. 366 (1867), and its progeny, defendant asserts that the pardon effectively cleansed his record, emancipating him from all penalties and disabilities which flowed from his conviction.[4]

If *Garland* ever had the broad impact on post-pardon proceedings which the sweep of its language implies, a century of judicial sculpturing has left more form than substance to the opinion. It can no longer be seriously contended, for example, that a pardon erases an offender's past, making it "as if he had never committed the offense." As courts have had to wrestle with specific post-pardon problems, it has been held, for example, that a pardoned conviction may be used for impeachment purposes, *State v. Grant,* Del.Ct.Gen.Ses., 3 W.W.Harr. 195, 133 A. 790 (1926); *Commonwealth v. Quaranta,* 295 Pa. 264, 145 A. 89 (1928); to increase a sentence of incarceration under a multiple offender statute, *Commonwealth v. Smith,* 324 Pa. 73, 187 A. 387 (1936); and as the basis for disbarment of an attorney. *State v. Snyder,* 136 Fla. 875, 187 So. 381, 382 (1939); *In re Bozarth,* 178 Okl. 427, 63 P.2d 726 (1936); *Snyder's Case,* 301 Pa. 276, 152 A. 33, 36 (1930); *In re Wolfe's Disbarment,* 288 Pa. 331, 135 A. 732 (1927). See Generally, Anno., 58 *A.L.R.3d* 1191 (1974).

■■■■ To fully understand the operation of Art. II, § 21, it is necessary to examine its purpose. In our view, it is essentially a character provision, mandating

---

4. In *Garland,* the Supreme Court said: "A pardon reaches both the punishment prescribed for the offense and the guilt of the offender; and when the pardon is full, it releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offense. If grant-ed before conviction, it prevents any of the penalties and disabilities, consequent upon conviction, from attaching; if granted after conviction, it removes the penalties and disabilities, and restores him to all his civil rights; it makes him, as it were, a new man, and gives him a new credit and capacity."

that all candidates for State office possess high moral qualities. It is not a provision designed to punish an offender. While conviction of an infamous crime does not imply than an offender is incapable of functioning as a respected and productive member of society, it is irreversible evidence that the offender does not possess the requisite character for public office. It is important to emphasize that we are not concerned here with the standard of compassion which should govern daily interpersonal relationships. We deal, rather, with a norm established by our Constitution for those who seek to govern us. Without question, it is a demanding norm.

▆ Indeed, the principles governing pre-election disqualification appear to be equally applicable to post-election situations. For example, Art. XV, § 6, gives the Governor the authority to "remove from office any public officer convicted of misbehavior in office or of any infamous crime." Compare also, Art. VI, § 2, which provides for impeachment and removal from office of "civil officers . . . for treason, bribery or any high crime or misdemeanor in office."

▆ While a pardon removes all legal punishments and disabilities attached to a conviction, we hold that it cannot erase the *fact* that the offender was convicted of an infamous crime and it is the fact of conviction alone, not its continuing viability, which renders the offender ineligible to hold public office. *Ridgeway v. Catlett,* 238 Ark. 323, 379 S.W.2d 277 (1964); *State v. Grant,* supra. As this Court said in *Grant,* 133 A. at 791:

> [A pardon] . . . removes the disability, but does not change the common-law principle that the conviction of an infamous offense is evidence of bad character for truth. (Citing *Curtis v. Cochran,* 50 N.H. 242.)

Thus, the Pennsylvania pardon neither obliterates the prior conviction nor restores

defendant's eligibility for office under Art. II, § 21 of the Del.Const.

## VI.

Since we assumed that the pardon covered all convictions and ruled that the pardon does not restore defendant's eligibility for office, it was unnecessary to address question 1 E.

The certified questions were answered as indicated above. We concluded that defendant was ineligible to hold the Office of President of New Castle County Council.