**In re REQUEST OF the GOVERNOR FOR an ADVISORY OPINION.**

No. 311, 2008.

Supreme Court of Delaware.

Submitted: June 20, 2008.
Decided: June 24, 2008.
As Revised June 25, 2008.

Donald J. Wolfe, Jr., Timothy R. Dudderar, Meghan M. Dougherty and Jaime L. White, Potter Anderson & Corroon, LLP,

Wilmington, DE, for affirmative position on Questions 1 and 2.

Richard A. Morse, Andrew A. Lundgren, and Kristen Salvatore DePalma, Young Conaway Stargatt & Taylor, LLP, Wilmington, DE, for negative position on Questions 1 and 2.

Before STEELE, Chief Justice, BERGER and JACOBS, Justices, constituting the qualified and available justices.

To: The Honorable Ruth Ann Minner

On Friday, June 20, 2008, you asked the Justices for their opinions on two questions relating to your nomination of Bernard Pepukayi to the office of Family Court Commissioner for the State of Delaware.[1] You asked us to expedite our response because the Senate is scheduled to hold hearings and vote on various nominees, including Pepukayi, on Wednesday, June 25, 2008.

The Court appointed attorneys from the firm Potter Anderson & Corroon LLP, to submit a brief in support of an affirmative answer and attorneys from the firm Young, Conaway, Stargatt & Taylor, LLP, to submit a brief in support of a negative answer to your questions. We deeply appreciate the *pro bono* service of the following attorneys, who gave up their weekend to prepare briefs in accordance with your expedited schedule: Donald J. Wolfe, Jr., Esq., Timothy R. Dudderar, Esq., Meghan M. Dougherty, Esq., Jaime L. White, Esq., Richard A. Morse, Esq., Andrew A. Lundgren, Esq., and Kristen Salvatore DePalma, Esq.

## FACTS

Your request for an opinion, pursuant to 10 *Del. C.* § 141 and 29 *Del C.* § 2101, recounts certain facts about Pepukayi's background:

Mr. Pepukayi (formerly known as Bernard Howard) was convicted of delivery of a narcotic schedule If controlled substance and maintaining a vehicle for keeping controlled substances in 1990. The conduct that led to the convictions occurred in July 1990 when Mr. Pepukayi was 17 years old and between his junior and senior years of high school. On November 25, 1990, he turned 18 years old. He was arrested for his July conduct in December 1990. Consequently, he was charged and convicted as an adult.

Since the convictions, Mr. Pepukayi has done many extraordinary things. He graduated from James H. Groves High School by taking correspondence courses. He attended and graduated from college—*magna cum laude.* He subsequently graduated from law school. He has been pardoned for his offenses, and became a member of the Delaware Bar. He clerked for the Superior Court of Delaware, and subsequently served as a Deputy Attorney General where he prosecuted criminal cases. Furthermore, he has been my Deputy Legal Counsel for over four years. Mr. Pepukayi has been extremely active in his community and has mentored "at risk" youth for years. He has served the Delaware State Bar Association in a number of leadership capacities, and is currently the co-chair for the Committee on Professional Ethics. He is married and has two children.

As you noted in your request. Article II, Section 21 of the Delaware Constitution provides:

No person who shall be convicted of embezzlement of public money, bribery,

---

1. Two Justices recused themselves.

perjury or other infamous crime, shall be eligible to a seat in either House of the General Assembly, or capable of holding any office of trust, honor or profit under this State.

In light of this provision, you asked two questions:

1. Does either of Mr. Pepukayi's criminal convictions ... for conduct that occurred when he was 17 years old, and for which he has subsequently been pardoned, constitute under the totality of the circumstances an "infamous crime" pursuant to Section 21, Article II of the Delaware Constitution thereby prohibiting him from holding the office of Family Court Commissioner?

2. Does Section 21, Article II of the Delaware Constitution apply to an office within the Judicial Branch of Delaware State Government?

Because our respective opinions on the first question compel us to answer that question, "no," we need not address the second question.

### DISCUSSION

■ Any analysis of a Delaware Constitutional provision begins with that provision's language itself. The question is: What did the delegates to the Constitutional Convention of 1897 intend when they used the term "other infamous crime" in Art. II, § 21 of the Delaware Constitution? Today, that term has no commonly accepted meaning or use. Unfortunately, the legislative history of our 1897 Constitution reveals little helpful information for us to decipher what the delegates intended by their use of this term.

■ Accordingly, we next turn to precedent to help us determine the meaning of "infamous crime." In *Wier v. Peterson,*[2] the Delaware Supreme Court addressed several issues that relate to the present question. First, the *Peterson* Court held that not every felony is necessarily an "infamous crime" within the meaning of Section 21.[3] Rather, "the totality of the circumstances in each case must be examined before a determination may be made that a specific felony is infamous."[4] Second, the Court held that a subsequent pardon cannot erase the fact that an individual was convicted for an "infamous crime" because "it is the fact of conviction alone, not its continuing viability, which renders the offender ineligible to hold public office."[5] Third, and most important to the issue here, the Court held that Section 21 is a *character* provision:

To fully understand the operation of Art. II, § 21, it is necessary to examine its purpose. In our view, it is essentially a character provision, mandating that all candidates for State office possess high moral qualities. It is not a provision designed to punish an offender. While conviction of an infamous crime does not imply that an offender is incapable of functioning as a respected and productive member of society, it is irreversible evidence that the offender does not possess the requisite character for public office. It is important to emphasize that we are not concerned here with the standard of compassion which should govern daily interpersonal relationships. We deal, rather, with a norm established by our Constitution for those who seek to govern us. Without question, it is a demanding norm.[6]

---

2. 369 A.2d 1076 (Del.1976).

3. *Id.* at 1079.

4. *Id.*

5. *Id.* at 1081.

6. *Id.* at 1080–81.

In *Dorcy v. Dover Board of Elections,* Dorcy had been convicted of a misdemeanor in Ohio and was running for public office in Delaware.[7] The question was whether the misdemeanor conviction in Ohio could disqualify Dorcy from public office in Delaware under Article II, Section 21. A Superior Court judge examined the circumstances existing at the time Dorcy committed the misdemeanor in Ohio and determined that "if the conviction in the foreign jurisdiction, be it state or federal, would have been at the time of commission and conviction a felony under Delaware law, it would constitute a potentially disqualifying felony under [Section 21]."[8]

Based on our reading of Section 21 and *Peterson* and *Dorcy,* we conclude that neither Pepukayi's pardon nor his commendable adult behavior bears on his eligibility to serve under Section 21. Because precedent establishes Section 21 to be a character provision to be applied as of the time that the offenses were committed, we conclude that Pepukayi's *age* at the time he committed the crimes is the one fundamental and overriding circumstance.[9]

Our law recognizes that a minor's character and ability to control his behavior are not fully developed. The United States Supreme Court recently addressed this point:

> Three general differences between juveniles under 18 and adults demonstrate that juvenile offenders cannot with reliability be classified among the worst offenders. First, ... "[a] lack of maturity and an underdeveloped sense of responsibility are found in youth more often that in adults and are more understandable among the young. . . ."
>
> * * *
>
> The second area of difference is that juveniles are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure. . . . This is explained in part by the prevailing circumstance that juveniles have less control, or less experience with control, over their own environment.
>
> * * *
>
> The third broad difference is that the character of a juvenile is not as well formed as that of an adult. The personality traits of juveniles are more transitory, less fixed.
>
> * * *

---

7. 1994 WL 146012 at *2 (Del.Super.).

8. *Id.* at *7.

9. We recognize that Pepukayi was ultimately tried and convicted as an adult in Superior Court because during the nearly 6 month delay in prosecuting him Pepukayi turned 18. *Howard v. State,* 612 A.2d 158, 1992 Del. Lexis 262 (1992). The analysis here differs fundamentally from that employed in *Howard,* however. In *Howard,* we held that defendants subject to Family Court jurisdiction at the time of their "offenses" who reached "adulthood" before arrest and prosecution could be tried in Superior Court. The fact that Pepukayi could be tried in Superior Court merely because he turned 18 before his arrest is not dispositive of an analysis of the infamy of his acts as a juvenile and their impact on the application of a bar to public office contemplated by Art. II, § 21 of the Delaware Constitution of 1897. *Dorcy* requires us to consider the conduct at the *time* that the wrong occurred and determine what consequences would follow from the commission of *that* act at *that* time. Moreover, although we cannot draw too many conclusions from the trial judge's sentence for Pepukayi, we do note that Pepukayi only served probation, which may have been the trial judge's recognition of the incongruity that Pepukayi was exposed to greater penalties because of the State's delay, albeit not in bad faith, in prosecuting him. Therefore, the proper analysis for purposes of Article II, Section 21 must focus on Pepukayi's transgression in light of his age at that time.

.... From a moral standpoint it would be misguided to equate the failings of a minor with those of an adult, for a greater possibility exists that a minor's character deficiencies will be reformed.[10]

Apart from any pronouncements of the United States Supreme Court, we give considerable thought to our General Assembly's enactments that direct us to the manner in which the people's representatives believe Article II, Section 21 should be interpreted today. We begin with 10 *Del. C.* § 921. In that statute, the General Assembly declared the underlying social policy for treating acts violating our laws committed by persons under the age of 18. Our General Assembly has recognized and reaffirmed on a number of different occasions that a juvenile's delinquent acts, with very few exceptions, do not rise to a de-

gree of culpability that deserve a permanent stigma throughout his life.[11] Thus, rather than stigmatize a delinquent juvenile as a felon for life, the General Assembly has established a compassionate framework that adjudicates juvenile transgressions through a civil—not criminal—process, that focuses on rehabilitation rather than retribution.[12]

Accordingly, with few exceptions, the Family Court is granted exclusive original *civil* jurisdiction[13] to hear and decide proceedings involving:

> Any child charged in this State with delinquency by having committed any act or violation of any laws of this State or any subdivision thereof, except murder in the first or second degree, rape in the first degree, rape in the second de-

---

10. *Roper v. Simmons,* 543 U.S. 551, 569–70, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005).

11. *See* 10 *Del C.* § 921; 10 *Del. C.* § 1002; 10 *Del. C.* 1013; 11 *Del. C.* 4364.

12. *See* 10 *Del. C.* § 1002; *Hughes v. State,* 653 A.2d 241, 244 (Del.1994) ("Thus, in direct contrast to the criminal nature of an adult prosecution in the Superior Court, an adjudication of delinquency in the Family Court is a civil proceeding. The civil nature of a proceeding in Family Court removes the stigma of criminality which is inherent in an adult prosecution in Superior Court. Accordingly, 10 *Del. C.* § 1002 provides that 'no child shall be deemed a criminal by virtue of an allegation or adjudication of delinquency....'"); *G.D. v. State,* 389 A.2d 764, 765 (Del.1978); *State v. Wilson,* 545 A.2d 1178, 1181 (Del. 1988) ("By its creation of the Family Court, the General Assembly recognized the unique role that Court is called upon to play through the application of its civil processes in the resolution of offenses committed by children."); *Brooks v. Taylor,* 154 A.2d 386, 390 (Del.1959) ("All parties agree that the purpose of the juvenile court acts is the rehabilitation of the juvenile. The court seeks to help—not to punish. The adjudication of delinquency is not a conviction of crime nor does it entail any civil disability.").

13. Under 10 *Del. C.* § 921(2)(a) and 10 *Del. C.* § 1010(a)(1), Family Court does not have civil jurisdiction, and thus Superior Court has criminal jurisdiction, over children who are charged with "murder in the first or second degree, rape in the first degree, rape in the second degree, unlawful sexual intercourse in the first degree, assault in the first degree, robbery in the first degree (where such offense involves the display of what appears to be a deadly weapon or involves the representation by word or conduct that the person was in possession or control of a deadly weapon or involves the infliction of serious physical injury upon any person who was not a participant in the crime, and where the child has previously been adjudicated delinquent of 1 or more offenses which would constitute a felony were the child charged under the laws of this State), kidnapping in the first degree, or any attempt to commit said crimes...." Moreover, Family Court, for juveniles 16 years old or older, may have civil jurisdiction or Superior Court may have criminal jurisdiction, after an amenability hearing, over children who are charged with "murder in the second degree, manslaughter, robbery in the second degree, attempted murder (first or second degree), burglary in the first degree or arson in the first degree...." 10 *Del. C.* § 921(2)(b).

gree, unlawful sexual intercourse in the first degree, assault in the first degree, robbery in the first degree, (where such offense involves the display of what appears to be a deadly weapon or involves the representation by word or conduct that the person was in possession or control of a deadly weapon or involves the infliction of serious physical injury upon any person who was not a participant in the crime, and where the child has previously been adjudicated delinquent of 1 or more offenses which would constitute a felony were the child charged under the laws of this State), kidnapping in the first degree, or any attempt to commit said crimes.... [14]

In granting Family Court this exclusive jurisdiction, the General Assembly specifically provided that:

> [N]o child shall be deemed a criminal by virtue of an allegation or adjudication of delinquency, nor shall a child be charged with or prosecuted for a crime in any other court. In this Court the nature of the hearing and all other proceedings shall be in the interest of rather than against the child.[15]

Through these statutory sections, the General Assembly has announced a clear social policy that, although children may commit acts that would expose them to criminal penalties if they were adults, their transgressions should nevertheless be treated in a manner that promotes rehabilitation and avoids creating a permanent stigma for those infractions. The General Assembly has also avoided permanent branding by providing for automatic expungement of a juvenile's record after a gubernatorial pardon.[16]

With enumerated exceptions not relevant here, persons committing "any act of violation of any laws of this State ..." commit "acts of delinquency" within the original "civil jurisdiction" of the Family Court. The General Assembly contemplated that Pepukayi's offenses, (i.e. violations of Title 16 of the Delaware Code), when committed by persons under 18, would be "acts of delinquency" within the Family Court's civil jurisdiction. The fortuity that Pepukayi was not arrested until after he turned 18, at which point he could then be tried as an adult, adds nothing meaningful to an analysis of whether the legislatively declared social policy of this State demands that his actions be deemed "infamous" conduct that would forever disable him from being "capable of holding any office of trust, honor or profit under this State."

To us, it seems plain that the appropriate focus must be upon Pepukayi's minority at the time of his infractions and the General Assembly's clear legislative scheme to have the infractions Pepukayi committed while a minor,[17] treated as civil

---

14. *10 Del. C.* § 921.

15. *10 Del. C.* § 1002.

16. *See* 10 *Del. C.* § 1013. Similarly, the legislature has also provided that pardoned adults have a full restoration of their civil rights, which includes the "[r]ight to seek and hold public office...." 11 *Del. C.* § 4364. Although this statutory legislation alone cannot, and expressly provides that it does not, overcome any Delaware Constitutional bar on holding office after a conviction for an infamous crime, it does further demonstrate the

legislature's policy to promote rehabilitation after a pardon has been granted. In determining whether certain circumstances rise to the level of an "infamous crime," we must be wholly cognizant of the legislature's expressions and seek to implement the social policies that they have adopted.

17. It is important to note that these acts committed at age 17 were acts of delinquency not "joined properly with a felony pending against the same child in Superior Court," and therefore were not acts that would have subjected him to prosecution in Superior

acts of delinquency, not crimes at all, let alone "infamous" crimes. By virtue of 10 *Del. C* § 921, the General Assembly has removed acts of delinquency, but for those clearly excepted, from consideration as "infamous" under Article II, Section 21 of the Delaware Constitution of 1897.

Reviewing that Article II, Section 21 is, in essence, a "character provision" and a "demanding norm,"[18] we carefully scrutinize the circumstances surrounding the acts committed. In so doing, we give substantial weight to the General Assembly's policy declaration in 10 *Del C.* § 921 that Pepukayi's acts constituted "acts of delinquency" within the civil jurisdiction of Family Court at the time he committed those acts. That statutorily enshrined policy, we conclude, is wholly inconsistent with a view that those same actions can now be characterized as "infamous crimes" that serve as a lifetime bar to holding "public office."

Like the *Peterson* Court, we do not express normative views on whether involvement in the events underlying the acts "imply that an offender is incapable [or capable] of functioning as a respected and productive member of society."[19] Under our General Assembly's statutory scheme, Pepukayi's actions, at the time he committed them, exposed him to civil penalties for

delinquency. An act of civil delinquency by a juvenile, to which the General Assembly intentionally avoided attaching permanent stigma, is incompatible with the concept of an "infamous crime." Thus, each of us concludes that the General Assembly's declaration that Pepukayi's acts at 17 would constitute civil acts of delinquency and not crimes to be "irreversible evidence" that the bad judgments of a child are not "infamous" such that they forever serve to bar the man from successful pursuit of public office.

### CONCLUSION

Therefore, it is the individual opinion of each of the justices that the answer to your first question is the negative. Our answer to Question 1 renders Question 2 moot.

/s/ Myron T. Steele, Chief Justice

/s/ Carolyn Berger, Justice

/s/ Jack B. Jacobs, Justice

---

Court had he been arrested and tried before reaching the age of 18. 10 *Del C.* § 921(16).

18. *Peterson,* 369 A.2d at 1081.

19. *Id.*