# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|                                              |     |                          |
| -------------------------------------------- | --- | ------------------------ |
| STATE OF DELAWARE, EX REL.                   | )   |                          |
| KATHLEEN JENNINGS,                           | )   |                          |
| ATTORNEY GENERAL,                            | )   |                          |
|                                              | )   |                          |
|     Petitioner,          | )   |                          |
|                                              | )   |                          |
|     v.                    | )   | C.A. No. N21C-04-091 JRJ |
|                                              | )   |                          |
| MICHAEL CAPRIGLIONE, and                     | )   |                          |
| TOWN OF NEWPORT                              | )   |                          |
|                                              | )   |                          |
|     Respondents.         | )   |                          |

## OPINION

Date Submitted:  April 27, 2021
Date Decided:  May 4, 2021

*Upon Petitioner's Motion for Summary Judgment*:  **GRANTED**.
*Upon Respondent Capriglione's Motion for Summary Judgment*[1]:
**DENIED**.

Mark A. Denny, Jr., Esquire, David C. Skoranski, Esquire (Argued), Department of Justice, Division of Civil Rights and Public Trust, 900 N. King Street, Wilmington, DE 19801, Attorneys for Petitioner.

Stephani J. Ballard, Esquire (Argued), Law Offices of Stephani J. Ballard, LLC, 1308 Delaware Avenue, Wilmington, DE 19806, Attorney for Respondent Michael Capriglione.

N. Christopher Griffiths, Esquire, Daniel R. Stanek, Esquire, Connolly Gallagher LLP, 1201 N. Market Street, 20th Floor, Wilmington, DE 19801, Attorneys for Respondent Town of Newport.

**Jurden, P.J.**

---

[1] As explained below, the Court finds it appropriate to resolve the merits of this case as if the parties had filed cross-motions for summary judgment.

## I.     INTRODUCTION

Michael Capriglione once served as the Chief of Police of the Town of Newport, Delaware.  He left that role after pleading guilty to the crime of Official Misconduct, a Class A misdemeanor.  Despite that conviction, the Town of Newport elected Capriglione to serve as one of its Commissioners.

The interaction between Capriglione's misdemeanor conviction and subsequent election has conjured up a rare question under the Delaware Constitution. Article II, § 21 of the Delaware Constitution prohibits anyone who has been convicted of "embezzlement of the public money, bribery, perjury or other infamous crime" from holding certain public offices.[2]  The question before the Court is whether Official Misconduct qualifies as an "infamous crime."

This is a difficult question.  Although the Supreme Court of Delaware has found that certain felonies qualify as infamous crimes, it has not decided whether any misdemeanors can ever qualify.  And the answer to this difficult question is consequential.  In this case, if Official Misconduct is deemed an infamous crime, then Capriglione may not serve as a Commissioner of the Town of Newport.  Nor may he hold any other "office of trust, honor or profit under this State."[3]

---

[2] DEL. CONST. art. II, § 21.
[3] *Id.*

In the Court's view, whether a crime is "infamous" does not depend on the felony-misdemeanor distinction but rather on the totality of the circumstances in each case. Having examined the totality of the circumstances surrounding Capriglione's conviction, the Court concludes that Official Misconduct, in Capriglione's case, is an infamous crime. Accordingly, § 21 prohibits Capriglione from serving as a Commissioner of the Town of Newport.

## II. BACKGROUND

### A. Capriglione's Official Misconduct Conviction

On May 19, 2018, while serving as the Chief of Police of Respondent Town of Newport, Respondent Michael Capriglione backed his police vehicle into a pickup truck in the Newport Police Department's parking lot.[4] A surveillance camera recorded the collision.[5] Later, Capriglione ordered the deletion of the surveillance video that captured the collision.[6]

On June 4, 2018, a grand jury indicted Capriglione on four charges: (1) Failure to Provide Information at the Scene of a Collision,[7] (2) Careless or

---

[4] *See* State of Delaware's Brief in Support of Its Petition for a Writ of *Quo Warranto* ("State of Delaware Brief"), Exhibit A (Guilty Plea of Michael Capriglione) (Trans. ID. 66549137); Sentencing Transcript, May 23, 2019, at 16:2–3 (Trans. ID. 66563046); Respondent Michael Capriglion's [sic] Brief in Opposition to Petition for Writ of *Quo Warranto* ("Capriglione Brief"), at 2 (Trans. ID. 66548628).

[5] State of Delaware Brief, Exhibit A (Guilty Plea of Michael Capriglione) (Trans. ID. 66549137).

[6] *Id.*; Sentencing Transcript, May 23, 2019, at 17:8–23 (Trans. ID. 66563046).

[7] 21 *Del. C.* § 4201(b).

Inattentive Driving,[8] (3) Tampering with Physical Evidence,[9] and (4) Official Misconduct.[10]  On February 8, 2019, Capriglione pled guilty to Careless or Inattentive Driving and Official Misconduct.[11]

The offense that lies at the heart of this case is Official Misconduct.  As to that offense, the indictment alleges that, "while being a public servant, intending to obtain a personal benefit, [Capriglione] committed an act, constituting an unauthorized exercise of official functions, knowing that the act is unauthorized."[12]

## B.    Capriglione's Election

On April 5, 2021, the Town of Newport elected Capriglione to serve as one of its Commissioners.[13]  The Town maintains a board of five Commissioners (one of whom is the Mayor); each wields extensive authority within the Town.[14] Capriglione was to be sworn in as a Commissioner on April 15, 2021 at 6:30 p.m.[15]

---

[8] 21 *Del. C.* § 4176.

[9] 11 *Del. C.* § 1269.

[10] 11 *Del. C.* § 1211.

[11] State of Delaware Brief, Exhibit A (Guilty Plea of Michael Capriglione) (Trans. ID. 66549137).

[12] State of Delaware Brief, Exhibit A (Grand Jury Indictment of Michael Capriglione) (Trans. ID. 66549137); *see also* 11 *Del. C.* § 1211(1).

[13] State of Delaware Brief, at 1, ¶ 2 (Trans. ID. 66549137); Capriglione Brief, at 4 (Trans. ID. 66548628).

[14] Charter of the Town of Newport, § 3-02 ("It shall be the duty of each Commissioner to propose necessary and appropriate legislation and resolutions for Commission consideration; serve on committees designated by the Mayor and Commissioners."); *id.* at § 3-07 ("All powers of the Town shall be vested in the Mayor and Commissioners, except as otherwise provided by law or this Charter, and the Mayor and Commissioners shall provide for the exercise thereof and for performance of all duties and obligations imposed on the Town by law.").

[15] *See* Hearing Transcript, April 15, 2021, at 11:4–6 (Trans. ID. 66570206).

On the evening of April 14, 2021, the State of Delaware, through Kathleen Jennings, Attorney General of the State of Delaware, filed a Petition for a Writ of *Quo Warranto* with the Court.[16] The State argued that the Delaware Constitution prohibited Capriglione from serving as a Commissioner due to his Official Misconduct conviction.[17] The State asked the Court to resolve this constitutional question and to prevent Capriglione from swearing in until it did so.[18]

On April 15, 2021, the Court held a hearing on the State's filing.[19] Hours later, the Court issued an order staying Capriglione's swearing in and committing to adjudicate the constitutional question within 21 days.[20] On April 26, 2021, the State and Capriglione each submitted briefing, and the Court held oral argument on April 27, 2021.[21] This is the Court's decision on the merits.

## III.  STANDARD OF REVIEW

---

[16] *See generally* Petition for a Writ of *Quo Warranto* (Trans. ID. 66514657).
[17] *Id.* at 5, ¶ 15.
[18] *Id.* at 1, ¶ 1.
[19] *See generally* Hearing Transcript, April 15, 2021 (Trans. ID. 66570206).
[20] Order Granting Stay, at 3–4, ¶ 7 (Trans. ID. 66519690).
[21] *See generally* State of Delaware Brief (Trans. ID. 66549137); Capriglione Brief (Trans. ID. 66548628); Oral Argument Transcript, April 27, 2021.  The Town of Newport takes no position in this matter; it neither submitted a brief nor gave an oral argument.  Oral Argument Transcript, April 27, 2021, at 3:1–5 ("The Court:  Does the Town of Newport intend on offering any argument? I know you did not submit any briefing.  Mr. Griffiths:  No, your Honor, we continue to take no position.").

Before proceeding to the merits, however, the Court must resolve a rather technical matter. Recall that the State filed a "Petition for a Writ of *Quo Warranto*." In general, *quo warranto*

> is a remedy that is essentially adversarial in nature that seeks *to remove* the challenged officer from a position. The writ or order is like a summons commanding the respondent to show by what authority he or she claims to hold an office and is, in effect, an order to show cause.[22]

The Supreme Court of Delaware has explained that a *quo warranto* proceeding is "brought by the Attorney General in the public interest against an alleged usurper of the office."[23]

The upshot is that an "alleged usurper" must take office before the Attorney General initiates a *quo warranto* proceeding.[24] Capriglione, as noted, has not taken office. When the issue is whether a person in Capriglione's position has the right to take office, a party typically seeks declaratory judgment; the Court then resolves the case by way of a dispositive motion, such as a motion for summary judgment.[25]

---

[22] 65 AM. JUR. 2d *Quo Warranto* § 2 (Feb. 2021) (emphasis added).

[23] *Hampson v. State*, 233 A.2d 155, 157 (Del. 1967).

[24] *Cf. State ex rel. Wier v. Peterson*, 369 A.2d 1076, 1077–78 (Del. 1976) (emphasis added) (noting that the Attorney General sought a "*declaratory judgment* concerning defendant's eligibility to hold" office after the defendant had been certified).

[25] *See, e.g.*, *Dorcy v. City of Dover Bd. of Elections*, 1994 WL 146012, at *1 (Del. Super. Ct. Mar. 25, 1994); *Holloway v. State Dep't of Elections*, 1992 WL 149511, at *1 (Del. Super. Ct. June 25, 1992). Indeed, at the April 15, 2021 hearing, the State conceded that it had not found a case in which a writ of *quo warranto* had been sought before a person took office; instead, the State continued, those cases typically involved declaratory judgments. *See* Hearing Transcript, April 15, 2021, at 7:7–18 (Trans. ID. 66570206).

Here, no party has filed a motion for a declaratory judgment or a motion for summary judgment. During a teleconference, however, the Court informed counsel that it would treat the State's filing as a motion for declaratory judgment, and no objections were raised during the teleconference—or during the oral argument that followed it.[26] Pursuant to Delaware Superior Court Civil Rule 1, and consistent with established practice, the Court will now proceed as though the parties have filed cross-motions for summary judgment.[27] The Court relies only on facts that are undisputed or in public records, and the parties seek a judgment as a matter of law.

The State's argument is that Official Misconduct—though a misdemeanor— qualifies as an infamous crime in light of the totality of the circumstances and the conduct underlying Capriglione's conviction.[28] Capriglione responds that Official Misconduct cannot qualify as an infamous crime because it is a misdemeanor; in Capriglione's view, infamous crimes include only a subset of felonies.[29]

## IV.  DISCUSSION

### A.  The Delaware Constitution

---

[26] Teleconference Transcript, April 19, 2021. ("The Court: So we're proceeding as if the State's filing was styled a motion for a declaratory judgment . . . .").

[27] Del. Super. Ct. Civ. R. 1 ("These Rules shall govern the procedure in the Superior Court of the State of Delaware with the exceptions stated in Rule 81. They shall be construed and administered to secure the just, speedy and inexpensive determination of every proceeding.").

[28] *See* State of Delaware Brief, at 16–17, ¶ 31 (Trans. ID. 66549137).

[29] Capriglione Brief, at 6 (Trans. ID. 66548628).

Naturally, the Court begins with the text of Article II, § 21 of the Delaware Constitution.[30]  That section provides:

> No person who shall be convicted of embezzlement of the public money, bribery, perjury or other infamous crime, shall be eligible to a seat in either House of the General Assembly, or capable of holding any office of trust, honor or profit under this State.[31]

This section has two components:  an "office" component and a "crime" component.[32]  As for the "office" component, is undisputed that the office of Commissioner of the Town of Newport is an "office of trust, honor or profit under this State."[33]  As for the "crime" component, no party has attempted to shoehorn the crime of Official Misconduct into the crimes of "embezzlement of the public money," "bribery," or "perjury."

The question that remains is whether Official Misconduct qualifies as an "infamous crime."  In its most recent case involving § 21, the Supreme Court of Delaware consulted the legislative history of the Delaware Constitution but found "little helpful information . . . to decipher what the delegates intended by their use

---

[30] *In re: Request of the Governor for an Advisory Opinion (Pepukayi)*, 950 A.2d 651, 653 (Del. 2008).

[31] DEL. CONST. art. II, § 21.

[32] *See Pepukayi*, 950 A.2d at 653.

[33] State of Delaware Brief, at 5, ¶ 15; Capriglione Brief, at 8 (Trans. ID. 66548628).

of this term."[34]  The Supreme Court then moved on to the case law, as the Court does here.[35]

## B.    Delaware Case Law

At the outset of this Opinion, the Court noted that the Supreme Court of Delaware has not decided whether a misdemeanor—such as Official Misconduct— can ever qualify as an infamous crime.  The Superior Court, however, has addressed that issue.  Nonetheless, as the Court will explain, to the extent that the Superior Court has ruled on whether a misdemeanor can qualify as an infamous crime, it has done so on the basis of *obiter dicta*.[36]

### 1.    Superior Court Decisions

#### a.    McLaughlin

The first relevant case is *McLaughlin v. Department of Elections of New Castle County*.[37]  In its decision, the Court quoted a bench ruling that it had made in

---

[34] *Pepukayi*, 950 A.2d at 653; *see also Dorcy v. City of Dover Bd. of Elections*, 1994 WL 146012, at *3–4 (Del. Super. Ct. Mar. 25, 1994).

[35] *Pepukayi*, 950 A.2d at 653.

[36] *Dictum*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "obiter dictum" as a "judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (although it may be considered persuasive).").  The Supreme Court of Delaware has noted that "*obiter dicta* . . . is . . . not binding as legal precedent." *Humm v. Aetna Casualty & Sur. Co.*, 656 A.2d 712, 716 (Del. 1995) (citations omitted); *accord Wild Meadows MHC, LLC v. Weidman*, 2020 WL 3889057, at *7 (Del. Super. Ct. July 10, 2020) (citations omitted) ("When a court refers to 'dicta,' it is often referring to 'obiter dicta' which are statements or comments made 'by the way.' *Obiter dicta* are not binding precedent and therefore need not be followed by a lower court.").

[37] *See generally McLaughlin v. Dep't of Elections of New Castle Cty.*, Civil Action No. 728 (Del. Super. Ct. Oct. 19, 1970), *rev'd sub nom*, *Fonville v. McLaughlin*, 270 A.2d 529 (Del. 1970).

that case: "We decide that an infamous crime, as that phrase is used in our Constitution (Art. 2, Sec. 21), *includes only felony convictions*, without deciding that all felony convictions are necessarily infamous."[38] It follows from that statement that, in the Court's view, misdemeanors cannot be infamous crimes.

But a misdemeanor was not before the Court in *McLaughlin*. Rather, the issue in that case was whether Johnny B. Johnson was "eligible to be a candidate and have his name on the ballot for the office of Representative in the State General Assembly" because the Court had stricken his "plea or verdict of guilty of grand larceny, a felony."[39] The Court concluded that Johnson was eligible.[40]

The Supreme Court of Delaware reversed.[41] It held that "the striking of [Johnson's] guilty plea notwithstanding, Johnson remains within the ban of Art. 2, § 21 of the Delaware Constitution as one ineligible to hold a seat in the General Assembly because he stands convicted of an infamous crime."[42] In coming to that conclusion, the Supreme Court agreed with the Superior Court's ruling that "grand larceny, a felony, is an 'infamous' crime within the meaning of Art. 2, § 21."[43] But the Superior Court's statement that "infamous crime . . . includes only felony

---

[38] *Id.* at 3 n.1 (emphasis added).
[39] *Id.* at 3.
[40] *Id.* at 6.
[41] *Fonville v. McLaughlin*, 270 A.2d 529, 531 (Del. 1970).
[42] *Id.*
[43] *Id.* at 530.

10

convictions" went unreviewed because it was *dictum*; it was not essential to the Superior Court's judgment.

### b. *Holloway*

Even so, the Court in *Holloway v. State Department of Elections* expressly relied on that statement.[44] The issue in *Holloway* was whether Herman M. Holloway, Jr. could run for State Representative despite having been "convicted of a total of four counts of personal income tax evasion, two counts of attempting to evade or defeat tax and two counts of making false statements, all misdemeanors."[45]

The Court in *Holloway* began its analysis of whether these crimes were "infamous" by quoting the *McLaughlin dictum*.[46] Next, the Court quoted *State ex rel. Wier v. Peterson* (a Supreme Court case discussed below) for the proposition that not "every felony is necessarily a crime of infamy; on the contrary, the totality of the circumstances in each case must be examined before a determination may be made that a specific felony is infamous."[47] The Court then held that Holloway's "misdemeanor convictions were not convictions for 'infamous crimes' as contemplated by the Delaware Constitution."[48] Soon after it announced its holding,

---

[44] *Holloway v. State Dep't of Elections*, 1992 WL 149511, at *2 (Del. Super. Ct. June 25, 1992).
[45] *Id.* at *1 (citations omitted).
[46] *Id.* at *2 (quoting *McLaughlin v. Dep't of Elections of New Castle Cty.*, C.A. No. 728, at 3 n.1 (Del. Super. Ct. Oct. 19, 1970)).
[47] *Id.* (emphasis omitted in *Holloway*) (quoting *State ex rel. Wier v. Peterson*, 369 A.2d 1076, 1079 (Del. 1976)).
[48] *Id.*

11

the Court—perhaps invoking *Peterson*—stated, "*Under the circumstances of this case*, it must be left to the voters to decide whether [Holloway] is fit to govern."[49]

*Holloway* is notable for two reasons. First, the Court expressly relied on the *McLaughlin dictum*. That does not automatically invalidate *Holloway*, of course; courts may choose to follow *dicta* even if they are not required to do so.[50] But the Court also seemed to limit its holding to "the circumstances of this case." This limitation provides a second reason to question *Holloway*'s precedential value as to the issue of whether a misdemeanor can qualify as an infamous crime. If anything, *Holloway* stands for the proposition that the circumstances must be taken into account. In brief, this Court finds that *Holloway* does not stabilize *McLaughlin*'s shaky foundation.

### c. *Dorcy*

The final Superior Court case in this trilogy is *Dorcy v. City of Dover Board of Elections*.[51] The issue in that case was whether T. Magoo Dorcy was eligible to run for Mayor of the City of Dover even though he had pled guilty in Ohio to

---

[49] *Id.* (emphasis added).

[50] *Wild Meadows MHC, LLC v. Weidman*, 2020 WL 3889057, at *7 (Del. Super. Ct. July 10, 2020) (citation omitted) ("*Obiter dicta* are not binding precedent and therefore need not be followed by a lower court.").

[51] *See generally Dorcy v. City of Dover Bd. of Elections*, 1994 WL 146012 (Del. Super. Ct. Mar. 25, 1994).

attempted gross sexual imposition.[52] Due to some unknown procedure, the charge to which Dorcy pled guilty had been deemed a misdemeanor under Ohio law.[53]

The Court in *Dorcy* reviewed the case law for guidance as to whether misdemeanors could qualify as infamous crimes. It first rejected the *McLaughlin* dictum.[54] It then rejected a statement in *Peterson* as *dictum* because that case, like *McLaughlin*, involved a felony.[55] When the Court arrived at *Holloway*, however, it concluded that it had found a decision *holding* that misdemeanors cannot qualify as infamous crimes.[56] Indeed, the Court determined that the *Holloway* holding had special significance because a false statement was among the misdemeanors involved in *Holloway*, and *crimen falsi* met the traditional definition of infamous crimes.[57] The Court expressed an unwillingness to overturn *Holloway* and "hold that a misdemeanor can ever be an infamous crime barring a person from seeking public office."[58]

But the Court in *Dorcy* was not in a position to have to affirm or overturn *Holloway*. The question in *Dorcy* was not whether a misdemeanor qualified as an infamous crime. Rather, the question was whether it was "appropriate to view the

---

[52] *Id.* at *1 (citation omitted).
[53] *Id.*
[54] *Id.* at *4.
[55] *Id.*
[56] *Id.* at *5 (citation omitted).
[57] *Id.* (citations omitted).
[58] *Id.* at *6.

Ohio misdemeanor conviction as a *felony* under Delaware law for purposes of public office disqualification since the same conduct when committed would have been a felony under Delaware law."[59] And the Court held "that if the conviction in the foreign jurisdiction, be it state or federal, would have been at the time of commission and conviction a *felony* under Delaware law, it would constitute a potentially disqualifying *felony* under Art. II, § 21."[60] The fact that the crime had been deemed a misdemeanor in Ohio was irrelevant to the Court's § 21 analysis.[61] What mattered was whether the underlying conduct would have amounted to a felony under Delaware law.[62] After the Court determined that it would have, the Court cited *Peterson* and continued its analysis of whether the felony was an infamous crime.[63] For these reasons, the Court's affirmation of the *Holloway* holding is *dictum*.

In sum, the Court finds that *dicta* pervade the Superior Court cases that purport to decide that a misdemeanor cannot qualify as an infamous crime. Accordingly, this Court need not follow those decisions in resolving the case before it. The Court now turns the relevant Supreme Court cases.

### 2. Supreme Court Decisions

---

[59] *Id.* at *2 (emphasis added).

[60] *Id.* at *7.

[61] On appeal, the Supreme Court expressed uncertainty as to whether the Ohio crime was, in fact, a misdemeanor. *Dorcy v. City of Dover Bd. of Elections*, 1994 WL 151030, at *1 (Del. Apr. 12, 1994) ("It is unclear on the record whether the foregoing constituted a felony or a misdemeanor in Ohio at that time.").

[62] *Dorcy*, 1994 WL 146012, at *7.

[63] *Id.* (citing *State ex rel. Wier v. Peterson*, 369 A.2d 1076, 1079 (Del. 1976)).

Although the Supreme Court of Delaware has not decided whether a misdemeanor can ever qualify as an infamous crime, its decisions contain helpful discussion about infamous crimes and § 21 more generally. Three cases are of note: *Fonville v. McLaughlin*,[64] *State ex rel. Wier v. Peterson*,[65] and *In re: Request of the Governor for an Advisory Opinion (Pepukayi)*.[66]

In *Fonville*, the Supreme Court concluded that grand larceny, a felony, was an infamous crime.[67] Building on that conclusion, the Supreme Court in *Peterson* noted that "not . . . *every* felony is necessarily a crime of infamy; on the contrary, the totality of the circumstances in each case must be examined before a determination may be made that a specific felony is infamous."[68] Later in *Peterson*, the Supreme Court elaborated on the general aim of § 21:

> To fully understand the operation of Art. II, § 21, it is necessary to examine its purpose. In our view, it is essentially a character provision, mandating that all candidates for State office possess high moral qualities. It is not a provision designed to punish an offender. While conviction of an infamous crime does not imply than an offender is incapable of functioning as a respected and productive member of society, it is irreversible evidence that the offender does not possess the requisite character for public office. It is important to emphasize that we are not concerned here with the standard of compassion which should govern daily interpersonal relationships. We deal, rather, with

---

[64] *See generally Fonville v. McLaughlin*, 270 A.2d 529 (Del. 1970).
[65] *See generally State ex rel. Wier v. Peterson*, 369 A.2d 1076 (Del. 1976).
[66] *See generally In re: Request of the Governor for an Advisory Opinion (Pepukayi)*, 950 A.2d 651 (Del. 2008).
[67] *Fonville*, 270 A.2d at 530.
[68] *Peterson*, 369 A.2d at 1079.

a norm established by our Constitution for those who seek to govern us. Without question, it is a demanding norm.[69]

The Supreme Court reiterated the *Peterson* elaboration in its most recent case involving § 21, *Pepukayi*.[70]

True, no misdemeanors were involved in *Fonville*, *Peterson*, or *Pepukayi*. But that does not persuade the Court that the Supreme Court's discussion applies only to felonies, as Capriglione argues.[71] First, the Supreme Court in *Pepukayi* recognized that it was faced with "civil acts of delinquency"—not felonies or misdemeanors.[72] Yet the Supreme Court still found it important to affirm its statement from *Peterson* "that Article II, Section 21 is, in essence, a 'character provision' and a 'demanding norm.'"[73] And the Supreme Court still "carefully scrutinize[d] the circumstances surrounding the acts committed."[74] Thus, the *Peterson* considerations are not limited to felonies alone.

---

[69] *Id.* at 1080–81.

[70] *Pepukayi*, 950 A.2d at 653 (quoting *State ex rel. Wier v. Peterson*, 369 A.2d 1076, 1080–81 (Del. 1976)).

[71] *See* Oral Argument Transcript, April 27, 2021, at 26:11–16 (Trans. ID. 66568995) ("In effect, what *Peterson* held was [that] it's a felony-plus test[;] it's got to be a felony before we even look at it. . . . [T]hat is where they get the character, totality of the circumstances, [and] the more factual analysis of what the underlying conduct is."); Capriglione's Brief, at 10 (Trans. ID. 66548628) ("The clear consensus of *McLaughlin*, *Fonville*, *Peterson* and *Pepukayi* is that, to rise to the level of an 'infamous crime', the offense must not only be a felony, but must be a felony which particularly offends the sensibilities and basic tenets of decency.").

[72] *In re Request of the Governor (Pepukayi)*, 950 A.2d 651, 656–57 (Del. 2008) (emphasis added) ("To us, it seems plain that the appropriate focus must be upon Pepukayi's minority at the time of his infractions and the General Assembly's clear legislative scheme to have the infractions Pepukayi committed while a minor, treated as civil acts of delinquency, *not crimes at all, let alone 'infamous' crimes*.").

[73] *Id.* at 657.

[74] *Id.*

Finally, and most importantly, *Peterson*'s more general statement about the purpose of § 21 transcends the felony-misdemeanor distinction.[75] It makes clear that courts must assess the relevant facts and the context surrounding a conviction, which is what a totality-of-the-circumstances analysis accomplishes. The Court now applies that analysis to Capriglione's case.

### C. The Totality of the Circumstances in Capriglione's Case

During Capriglione's sentencing hearing, the sentencing judge observed the following:

> This case started with a minor collision that was, obviously, unintentional on your part that did not result in injury to anyone. And that could have happened, really, to anyone. I reviewed the video. It was obvious the collision itself was unintentional.[76]

Capriglione's subsequent conduct, however, turned an innocuous collision into a charge of Official Misconduct. That charge—to which Capriglione pled guilty— alleged that Capriglione, "while being a public servant, intending to obtain a personal benefit, committed an act, constituting an unauthorized exercise of official functions, knowing that the act is unauthorized."[77] The Official Misconduct charge comprises a number of components, each of which contributes to the full picture of what it meant for Capriglione to plead guilty.

---

[75] This is a distinction that the drafters of § 21 could have expressly made but chose not to.

[76] Sentencing Transcript, May 23, 2019, at 23:6–11 (Trans. ID. 66563046).

[77] State of Delaware Brief, Exhibit A (Grand Jury Indictment of Michael Capriglione) (Trans. ID. 66549137); *see also* 11 *Del. C.* § 1211(1).

To begin, Capriglione was a "public servant."[78]  But he was not *merely* a public servant; he was the Town of Newport's Chief of Police, a position of extensive authority.[79]  Next, Capriglione "committed an act":  ordering the deletion of a surveillance video.  That act was an "exercise of official functions" because Capriglione, as Chief of Police, had the authority to order the deletion of police department surveillance videos.  But Capriglione exercised that official function "knowing that the act [was] unauthorized."  And by committing the act, he "intend[ed] to obtain a personal benefit," as deleting the video erased the record of the vehicle collision.

Articulated in this way, the crime of Official Misconduct evokes the term *crimen falsi*, which is a "traditional and long-standing definition of infamous crime."[80]  *Crimen falsi* is a "crime in the nature of perjury" or any "other offense that involves some element of dishonesty or false statement."[81]  Unlike the false statement offense in *Holloway*—which the Court found was not an infamous crime despite being *crimen falsi*—Capriglione's Official Misconduct offense amounts to a

---

[78] Sentencing Transcript, May 23, 2019, at 23:3–5 (Trans. ID. 66563046).

[79] *See Sherman v. State Dep't of Pub. Safety*, 190 A.3d 148, 155 (Del. 2018) ("However important plumbers, electricians, accountants, and myriad other providers of services are to their customers, none of them wield the potent coercive power entrusted to our police under our laws. None of these employees have the presumptive legal authority to deprive a person of her liberty and subject her to a period of incarceration. By contrast, that is the authority our police officers possess, which is enforced by criminal laws punishing arrestees for resisting any exercise of their authority.").

[80] *Dorcy v. City of Dover Bd. of Elections*, 1994 WL 146012, at *5 (Del. Super. Ct. Mar. 25, 1994) (citation omitted).

[81] *Crimen*, BLACK'S LAW DICTIONARY (11th ed. 2019).

breach of the public trust.[82]  It calls into question the character of a person in whom so much trust was vested by virtue of his position.

As the Supreme Court has stated, Article II, § 21 is a "character provision" that demands that "all candidates for State office possess high moral qualities."[83]  It imposes a "demanding norm" on those who wish to hold public office.[84]  Based on the conduct that Capriglione admitted to engaging in while serving as Chief of Police, the Court finds that Capriglione does not satisfy these standards.  By so finding, the Court does not mean to convey "normative views on whether involvement in the events underlying the acts 'imply that an offender is incapable [or capable] of functioning as a respected and productive member of society.'"[85]  After all, Capriglione won an election to serve as a Commissioner of the Town of Newport.  Still, the Court must apply the standards "established by our Constitution for those who seek to govern us."[86]  Having done so, the Court finds that

---

[82] *See* Oral Argument Transcript, April 27, 2021, at 29:17–8 (Trans. ID. 66568995) ("I would not dispute that it's a position of trust."); Sentencing Transcript, May 23, 2019, at 23:3–5 (Trans. ID. 66563046) ("The Court: [I]t is your position and your stature as a public servant, it's that very stature that makes what you did in this case so troubling."); State of Delaware Brief, Exhibit A (Guilty Plea of Michael Capriglione) (Trans. ID. 66549137) (providing that an element of Official Misconduct is "being a public servant").

[83] *State ex rel. Wier v. Peterson*, 369 A.2d 1076, 1080–81 (Del. 1976).

[84] *Id.* at 1081.

[85] *In re: Request of the Governor for an Advisory Opinion (Pepukayi)*, 950 A.2d 651, 657 (Del. 2008) (quoting *State ex rel. Wier v. Peterson*, 369 A.2d 1076, 1081 (Del. 1976)).

[86] *Peterson*, 369 A.2d at 1081.

Capriglione's conviction of Official Misconduct is a conviction of an infamous crime under Article II, § 21 of the Delaware Constitution.

## V.    CONCLUSION

The Court finds that Delaware precedent offers no definitive answer to the precise question of whether a misdemeanor can ever qualify as an "infamous crime" under Article II, § 21 of the Delaware Constitution.  But the Supreme Court of Delaware's decision in *State ex rel. Wier v. Peterson* does provide guidance as to the purpose of § 21 and the analysis that the Court must engage in when determining whether a crime is "infamous."  Following *Peterson*, the Court concludes, under the circumstances of Capriglione's case, that Official Misconduct is an "infamous crime" within the meaning of the Delaware Constitution.  Capriglione is therefore prohibited from serving as a Commissioner for the Town of Newport and from holding any other "office of trust, honor or profit under this State."  Consequently, the State's Motion for Summary Judgment is **GRANTED**, and Capriglione's Motion for Summary Judgment is **DENIED**.

**IT IS SO ORDERED.**

*Jan R. Jurden*

_____

Jan R. Jurden, President Judge

cc:  Prothonotary

20